# WHEELER *v.* JACKSON.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 65. Argued November 11, 1890. — Decided November 24, 1890.

The 15th section of the act of the legislature of New York, approved June 6, 1885, provides that no action or special proceeding shall thereafter be maintained against the city of Brooklyn, or the Registrar of Arrears of that city, to compel the execution or delivery of a lease upon any sale for taxes, assessments or water rates, made more than eight years prior to the above date, unless commenced within six months after that date, and notice thereof filed in the office of the Registrar of Arrears; also, that that officer shall, upon the expiration of such six months, cancel in his office all sales made more than eight years before the passage of the act, upon which no lease had been given, and no action commenced and

notice thereof filed, within the period limited as aforesaid, and that thereupon the lien of all such certificates of purchase should cease and determine. *Held*,

(1) That this section is not repugnant to the clause of the Constitution of the United States forbidding a state to pass any law impairing the obligation of contracts, or to the clause declaring that no state shall deprive any person of property without due process of law;

(2) That, consistently with those clauses, the legislature may prescribe a limitation for the bringing of suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided, in each case, a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of suit before the bar takes effect.

THIS action was brought in the Supreme Court of the State of New York by the plaintiff in error, plaintiff below, against the defendant in error, Registrar of Arrears of the city of Brooklyn, to restrain him from cancelling in his office a number of sales of lots of land for non-payment of taxes, which lots had been purchased by the plaintiff.

One part of the sales was alleged to have been made for non-payment of taxes, assessments and water rates, pursuant to the provisions of c. 384 of the laws of New York of 1854, and the acts amendatory thereof. These statutes are stated in full in the opinion, *infra*.

Another part was alleged to have been made for unpaid taxes, assessments and water rates pursuant to the provisions of c. 863 of the laws of New York of 1873, and the acts amendatory thereof. These also will be found in the opinion.

By c. 405, § 15 of the laws of New York of 1885, which will also be found in the opinion, provision was made for the cancellation of such sales made more than eight years prior to the passage of that act, upon which no leases should have been given and no action commenced. The plaintiff alleged that this statute, so far as it affected his rights under the several purchases, was "wholly unconstitutional and void."

The defendant demurred to the complaint. The demurrer was sustained and the complaint dismissed. This judgment was affirmed by the Supreme Court in general term, and by the Court of Appeals, 105 N. Y. 681. The plaintiff sued out this writ of error.

*Mr. John J. Townsend* for plaintiff in error.

I. The plaintiff's rights under the tax sale constitute a contract.

Under the statutes of New York, the city, being the owner of an uncollected tax or assessment, invites the plaintiff to advance the amount of the tax or assessment with interest and expenses.

The money paid in by the tax sale purchaser does not pay the tax; the tax remains as the foundation of his title. *Clementi* v. *Jackson*, 92 N. Y. 591.

The purchaser under these statutes in consideration of advancing the amount of the unpaid tax, interest and expenses becomes possessed of two rights defined in the statute: the right to have a lease for a stated term of years, and an action at law of ejectment or summary proceedings to obtain possession of the land; the further right to bide his time, not to take out a lease and engage in a litigation to secure the land itself, but, as the easier course, to wait and to rely on securing, through the operation of the record of the sale in the office of the Registrar, the very profitable return on his money provided by the percentage of fifteen per cent, which along with the amount of the purchase money the owner of the land is by the statute compelled to pay on redeeming the property in order to clear his title.

This latter is the right usually availed of by the tax sale purchaser. It is of no prejudice to the city, because the city has already received the advance of the amount of the tax, and in the absence of a lease can be drawn into no possible complication after the sale. It is useful to the owner of the land, because it keeps open for him the valuable privilege of redemption.

The two rights, that of taking out a lease and enforcing it, and that of awaiting redemption by the owner of the land, are separate and distinct rights, belonging to and vested in the tax sale purchaser.

These two rights are recognized by this court in *Curtis* v. *Whitney*, 13 Wall. 68.

These rights acquired by a purchaser at a tax sale amount
to, and are, a contract within the meaning of the clause of the
Constitution.   *Corbin* v. *Comrs. of Washington County,* 3 Fed.
Rep. 356; 1 McCrary, 521.

II. The operation of c. 405, § 15 of the laws of 1885, im-
pairs the validity of the purchaser's contract, and is therefore
unconstitutional.

That portion of the section following the proviso divides
itself into two clauses, the first beginning with the word " pro-
vided," and the second beginning with the words, " And after
the expiration of six months."

These two clauses relate respectively to the two rights speci-
fied in point I as being acquired by the tax sale purchaser
under the statutes regulating the sale.   It is with the second
clause printed in italics, that this appeal is more particularly
concerned.

The clause is not a statute of limitation in any sense; it is
baldly a statute impairing the obligation of a contract, destroy-
ing the rights acquired by the plaintiff as purchaser at the tax
sale.   It operates to destroy the security upon which the pur-
chaser relied when advancing his money at the sale; the secur-
ity which formed part of the contract represented by that
sale.   That security is purely *in rem* and depends on the lien
of the record after sale.   See § 34 of the statute; and *Haight*
v. *The Mayor,* 99 N. Y. 280.

There is no escape from this conclusion.   The purchaser
will have lost his purchase money and the delinquent owner
will have his land free from the plaintiff's claim.   This was
not the result contemplated at the time of the sale.   The law
in force at the time of the sale and defining the plaintiff's
rights entered into and became a part of the contract.   When
the law at that time said that the sale should be recorded and
should constitute a lien upon the land, this was the security
held out to intending purchasers to induce them to advance
their money.   The legislature cannot by subsequent legisla-
tion impair or destroy this security.

Remedies for the enforcement of rights may be regulated,
but the legislature under the guise of regulating the remedy

may not impair the obligation of the contract. *Nelson* v. *St. Martin's Parish*, 111 U. S. 716, 720; *Gunn* v. *Barry*, 15 Wall. 610, 622; *Edwards* v. *Kearzey*, 96 U. S. 595, 600; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *McCracken* v. *Hayward*, 2 How. 608; *Green* v. *Biddle*, 8 Wheat. 1; *Planters' Bank* v. *Sharp*, 6 How. 301; *Dikeman* v. *Dikeman*, 11 Paige, 484; *Robinson* v. *Howe*, 13 Wisconsin, 341; *Bruce* v. *Schuyler*, 4 Gilman (Ill.) 221; *S. C.* 46 Am. Dec. 447; *Damman* v. *Commissioners of Schools*, 4 Wisconsin, 414; *Robinson* v. *Magee*, 9 California, 81; *S. C.* 70 Am. Dec. 638.

III. The court below at special term relied upon *Butler* v. *Palmer*, 1 Hill, 324. That case distinctly recognizes that the legislature may act upon the remedy, but may not tamper with the contract. In this case the legislature did not touch the remedy, but nullified the plaintiff's contract. The converse of *Butler* v. *Palmer* has been decided in *Cargill* v. *Power*, 1 Michigan, 369; and *Willis* v. *Jelineck*, 27 Minnesota, 18. *Fisher* v. *Mayor, &c.*, 67 N. Y. 73; and *Jenkins* v. *Fahey*, 73 N. Y. 355, 364, were also cited to show what no one disputes, that a tax may be presumed to be satisfied, and that the claims of a tax purchaser may be barred by lapse of time.

What is denied is the right of the State to abrogate the contract — to cancel the sale or interfere with the record which is necessary to the lien, and all of which entered into and formed part of the contract.

IV. The second clause of section 15 destroys and cuts off the tax sale purchaser's rights without a hearing or opportunity to defend or to plead any excuse, and without compensation.

The proprietary right in the record of the sale of which the plaintiff became the purchaser at the tax sale — whether enforceable or not, whatever its value, whether the cloud it creates is a detriment to the owner of the land or not, — cannot be destroyed by act of the legislature without provision for compensation, and certainly not without provision for notice to those whose rights may be affected. The plaintiff is entitled to the record of the sale for what it is worth.

*Mr. Almet F. Jenks* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

The question upon this writ of error is, whether certain provisions of a statute of New York passed in 1885, and relating to sales of land in the city of Brooklyn for taxes, assessments and water rates, are repugnant to the Constitution of the United States. It arose upon a demurrer to the complaint filed by Wheeler against Jackson, as Registrar of Arrears of that city. The demurrer was sustained by the Supreme Court of the State, and the complaint dismissed. That judgment was affirmed in general term, and the latter judgment was affirmed by the Court of Appeals of New York. 105 N. Y. 681.

Upon examining the legislation of New York prior to the passage of the act of 1885, we find that the charter of Brooklyn, passed in 1854, provided that if any tax or assessment remained unpaid on the day specified in the published notice given by the collector of taxes, that officer should sell at public auction the property on which the tax or assessment was imposed "for the lowest term of years for which any person will take the same, and pay the amount of such tax or assessment with the interest and expenses;" the purchaser to receive a certificate of sale, which should be noted on the original tax or assessment rolls, as well as on the abstracts kept in the collector's office. The statute directed this certificate to be recorded in the collector's office, and declared that it should constitute "a lien upon the lands and premises therein described after the same shall have been so recorded;" and that no assignment of a certificate should have any effect until the notice of the same, with the name and residence of the assignee, was filed in the office of the collector of the district in which the lands were situated. The owner, mortgagee, occupant, or other person interested in the land, was given the right to redeem "at any time within two years after the sale for either tax or assessment," by paying to the collector for the use of the purchaser, "the said purchase-money, together with any other tax or assessment which the said purchaser may have paid, chargeable on said land, and which he is hereby

authorized to do, provided a notice thereof has been filed in the office of such collector, with fifteen per cent per annum in addition thereto, and the certificate of such collector, stating the payment and showing what land such payment is intended to redeem, shall be evidence of such redemption." Upon receipt of the moneys it became the duty of the collector to cause them to be refunded to the purchaser, his legal representatives or assigns, and all proceedings in relation to the sale were to cease. If the moneys were not paid according to the exigency of the notice, the collector was required to execute a conveyance of the property so sold. The statute contained this further provision: "§ 33. The collector of the district where the land sold for any tax or assessment shall not have been redeemed, as by this act provided, shall execute to the purchaser or his assigns, pursuant to the terms of sale, a proper conveyance of the lands so sold by him, which shall contain a brief statement of the proceedings had for the sale of said lands, and shall be evidence that such sale and other proceedings were regularly made and had according to the provisions of this act. He shall also forthwith note the same on the assessment rolls and abstract kept in his office. The grantee shall be entitled as against all persons whomsoever to the possession of said premises, and to the rents, issues and profits thereof, pursuant to the terms of his conveyance, and shall be entitled to obtain possession of his lands by summary proceedings, in the same manner as is provided by law for the removal of persons who hold over or continue in possession of real estate sold by virtue of an execution against them." Laws of N. Y. 1854, pp. 874, 878 to 881, c. 384, §§ 24, 26, 29, 30, 33, Title V. Of the Collection of Taxes and Assessments.

An amended charter of Brooklyn, passed June 28, 1873, repealed all former acts inconsistent with its provisions, and created for that city the Department of Arrears, with a chief officer named the Registrar of Arrears, upon whom were imposed all the duties theretofore required to be performed by any city officer or department in relation to advertising, selling and leasing property for assessments, taxes and water rates, and for the redemption of property sold therefor. Laws

of New York, 1873, p. 1318, c. 863, Title VIII, § 1. Sections 24, 26, 29, 30 and 33 of the act of 1854 were substantially re-enacted in sections 1, 3, 5, 6, 8 and 10 of that of 1873. The differences between the two acts do not affect the present controversy.

An act of June 6, 1885, amended that of 1873. The constitutionality of the 15th section of the former act is questioned in this case. That section is as follows:

"§ 15. None of the provisions of this act hereinbefore contained shall affect any sale for taxes, assessments or water rates heretofore made in said city, or the rights of the parties or the proceedings thereunder, but the same shall remain the same as though this act had not been passed; provided, however, that no action or special proceeding shall hereafter be brought or maintained against the city of Brooklyn, or the Registrar of Arrears of said city, to compel the execution or delivery of a lease upon any sale for taxes, assessments or water rates, made more than eight years prior to the passage of this act, unless such action or special proceeding is commenced within six months after the passage of this act, and notice thereof filed in the office of Registrar of Arrears, but this provision shall not operate to extend any statute of limitations now applicable in such cases. And after the expiration of six months from the passage of this act, it shall be the duty of the Registrar of Arrears, to cancel in his office all such sales made more than eight years prior to the passage of this act, upon which no lease shall have been given, and no action commenced, and notice thereof filed as aforesaid, within the period hereinbefore limited therefor; and thereupon the lien of all such certificates of sale shall cease and determine." Laws of New York, 1885, c. 405, § 15, p. 702.

The complaint shows that at divers times between September 22, 1856, and May 25, 1873, inclusive, at public auction held by the proper officer of Brooklyn, pursuant to the above act of 1854, and the acts amendatory thereof, the plaintiff Wheeler purchased, each for a term of years, 1253 different lots that were sold for the non-payment of taxes, assessments and water rates, and paid for each the amount set opposite its

number, as specified in a schedule filed with the complaint —
receiving from the collector a certificate of sale of each lot.
Each certificate declared that he was entitled, after the ex-
piration of two years from its date, to a lease of the lot men-
tioned for a named term of years, unless the premises were
sooner redeemed. The total amount of those purchases was
$28,516.69.

The complaint also shows that at divers times, from Septem-
ber 29, 1874, to February 23, 1875, inclusive, at public auction
held by the Registrar of Arrears of Brooklyn for like pur-
poses, pursuant to the act of 1873, and the acts amendatory
thereof, the plaintiff purchased, each for a term of years, 61
different lots sold for the non-payment of taxes, assessments
and water rates, paying for each the sum specified in a sched-
ule filed with the complaint, and receiving from the Registrar
similar certificates of sale. Each certificate was recorded in
the defendant's office. The total amount of the purchases
named in that schedule was $3611.17.

None of the lots purchased by Wheeler were redeemed from
sale; he is still the legal owner and holder of the certificates;
nevertheless, the defendant was about to cancel the sales, pur-
suant to the 15th section of the act of 1885, whereby, the
complaint alleges, "all public notice of the rights and lien of
the plaintiff will be wholly destroyed," and he will sustain
irreparable injury and damage. Alleging that such section is
unconstitutional and void, the plaintiff prays that the defend-
ant, his successors, agents, clerks and servants, be perpet-
ually enjoined from cancelling the sales or the record thereof.
Such is the case made by the complaint.

Is the above section of the act of 1885 repugnant to the
clause of the Constitution protecting the obligation of con-
tracts against impairment by state legislation? On behalf of
the plaintiff it is insisted that, under the statutes of 1854 and
1873, the purchaser, in consideration of his advancing the
amount of the unpaid taxes and interest, together with the
expenses of sale, became entitled to something more than a
conveyance or lease for a stated number of years, with the
right to maintain ejectment or summary proceedings to ob-

tain possession of the land purchased. He acquired, it is contended, the further right "to bide his time, not to take out a lease and engage in litigation to secure the land itself, but, as the easier course, to wait and rely on securing, through the operation of the record of sale in the office of the Registrar, the very profitable return on his money, provided by the percentage of fifteen per cent, which, along with the amount of the purchase money, the owner of the land is, by the statutes, compelled to pay, on redeeming the property, in order to clear his title." The latter right, we are informed by the plaintiff, is the one usually exercised by purchasers at tax sales in Brooklyn. Any interference with it, he contends, impairs the obligation of his contract with the city.

We cannot assent to this view. The plaintiff was entitled, by the contract, to a return of the amount paid by him, together with any other tax or assessment chargeable on the land and paid by him, with fifteen per cent per annum in addition thereto; and, if such amounts were not paid to the collector for him within two years after the sale, he could demand a conveyance according to the terms of his purchase, and obtain possession by summary proceedings. As none of the lots purchased were redeemed, the plaintiff became entitled, when the time for redemption passed, to a lease of each lot for the term of years specified in the respective certificates of sale. Now, the right to such leases was not taken away by the act of 1885. Nothing in that act prevented the plaintiff from obtaining them on the day after its passage. But, as we have seen, it did provide that no action or special proceeding should be brought or maintained to compel the execution of conveyances or leases in respect to any sale for taxes, assessments or water rates made more than eight years prior to June 6, 1885, unless instituted within six months after that date, and notice thereof filed in the office of the Registrar of Arrears.

Whatever was the period prescribed by the laws of New York prior to June 6, 1885, for such actions or special proceedings — and it is not disputed that there was a limitation under the local law for suits of that character — the time was reduced by the act of that date. Can this enactment be

assailed simply upon the ground that it prescribes a shorter time for the bringing of actions to compel the execution of such conveyances than was given when the contracts therefor were made? Clearly not. It is the settled doctrine of this court that the legislature may prescribe a limitation for the bringing of suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided, in each case, a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of suit before the bar takes effect. *Terry* v. *Anderson*, 95 U. S. 628, 632; *Koshkonong* v. *Burton*, 104 U. S. 668, 675; *Mitchell* v. *Clark*, 110 U. S. 633, 643. The latest case upon the subject in this court is *McGahey* v. *Virginia* (*In re Brown*), 135 U. S. 662, 701, 705, 706, 707, in which the above principle is affirmed, the court saying: "No one rule as to the length of time which will be deemed reasonable can be laid down for the government of all cases alike. Different circumstances will often require a different rule. What would be reasonable in one class of cases would be entirely unreasonable in another." We cannot say that the limitation prescribed by the act of 1885 is unreasonable when applied to those who neglected for eight years prior to its passage to demand the conveyances or leases to which they were entitled. On the contrary, considerations of public policy required that the records of the sale of real property in Brooklyn for taxes, assessments and water rates, should no longer remain in the condition to which they had been brought in 1885 by reason of purchasers having forborne, for an unreasonably long period, to obtain leases, that they might realize interest upon their investments in tax titles, at the rate of fifteen per cent per annum. By not taking a lease, when entitled to it, the purchaser put the taxpayer in a position where the latter would be compelled, if he desired to sell or mortgage the property to another, to pay not only the amount advanced by the former, but interest at the above rate for the whole time subsequent to the sale. The legislature did not intend, by the acts of 1854 and 1873, to establish any such relations between the taxpayer and the purchaser, or to put

the former at the mercy of the latter for an indefinite period; for both acts contemplated the execution by the collector of a lease immediately upon the expiration of the time for redemption — giving the purchaser, in that way, precisely what he bought. But whatever may have been the reasons that induced the enactment of the statute of 1885, the period within which actions must be brought was a matter resting primarily with the legislative department of the state government; and as statutes of limitation have for their object, and are deemed necessary to, the repose and security of society, the determination of that department should not be interfered with by the courts, unless the time allowed to bring suits upon existing causes of action is, in view of all the circumstances, so short as not to give parties affected by it a reasonable opportunity to protect their rights under the new law.

It is further contended that, even if the statute is sufficient to bar an action to compel the execution of a conveyance to the purchaser, unless brought within the time prescribed, it is unconstitutional in that it requires the Registrar — after the expiration of six months from its passage without any such action being commenced and notice thereof given within that period — to cancel in his office all sales made more than eight years prior to June 6, 1885, and provides that "thereupon the lien of all such certificates of sale shall cease and determine." That provision, it is said, destroys the security upon which the purchaser relied when he advanced his money, namely, the lien of the record after sale. This position is untenable. The substantial rights acquired by the purchaser was a return of his money, with interest, *or*, after a certain time, a lease of the premises for the term named in the certificate of sale. The lien created by the certificate of sale protected him during the period within which the owner of the property was permitted to redeem; and if the latter redeemed, he could only do so, of strict right, within a given time; and then only by reimbursing the purchaser all he had paid, with the addition of fifteen per cent per annum. If there was no redemption, the purchaser was entitled to a lease that would give him all for which he bargained. The lien, consequently, would cease

upon the execution and delivery to the purchaser of a lease. If the lien was of such character that the purchaser, not having received a conveyance, could enforce it by suit or special proceeding commenced for that specific purpose, the power of the legislature to prescribe a period within which such a suit or proceeding must be commenced, or the lien be lost, is as clear as its power to fix the time within which the purchaser must sue to compel the execution of a conveyance or lease. If, on the other hand, the lien was given only to protect the purchaser, in respect to his outlay, with interest, until he was entitled to demand a conveyance, or until a conveyance was actually made, the power of the legislature to require the record of sale to be cancelled and the lien to cease, when the purchaser, by not suing within the prescribed time, had lost his right to a conveyance or lease, cannot be questioned. The limitation prescribed by the statute applies equally to a suit to compel a conveyance, and to a proceeding (if a separate suit for that purpose could be maintained) to enforce the alleged lien. It declares, in effect, that the right to the lien and the right to a conveyance shall, in the cases specified, depend upon a suit being brought within a certain time to compel the execution of a conveyance in accordance with the terms of sale. In other words, that the record of a sale, including the certificate of sale, shall not remain a cloud upon the title. After the purchaser has failed, for six months after the passage of the act, to obtain, or to demand by suit — the time for redemption having passed — what, in view of the statute, must be regarded as the principal object of his purchase, namely, a conveyance or lease, with the right, by means of summary proceedings, to obtain possession of the premises sold to him for a term of years. We are of opinion that such legislation did not impair the obligation of the plaintiff's contract.

What has been said is sufficient to dispose of the additional suggestion to the effect that the cancellation of the record of sales at which the plaintiff purchased deprived him of his property without due process of law, in violation of the Fourteenth Amendment. He asserts a proprietary right in such record for what it was worth. But, if the observations made

by us in respect to the first point be sound, he had no such right, after permitting the period to elapse within which he could bring suit to compel the execution of a conveyance or lease. A statute of limitation cannot be said to impair the obligation of a contract, or to deprive one of property without due process of law, unless, in its application to an existing right of action, it unreasonably limits the opportunity to enforce that right by suit.

*Judgment affirmed.*