DAMERS ET AL., APPELLANTS, *v.* THE REGISTRAR, RESPONDENT.

APPEAL from a decision of the Registrar of Property of San Juan, Section 2, denying the admission to record of proceedings converting a possessory title into a title of dominion.

No. 61.—Decided March 30, 1914.

POSSESSORY TITLE PROCEEDINGS—DOMINION TITLE PROCEEDINGS—DUE PROCESS OF LAW.—On September 7, 1900, a possessory title proceeding was recorded in the registry of property and on September 5, 1913, the proceeding converting the possessory title into a dominion title, decided August 22, 1913, in accordance with the Judicial Order of April 4, 1899, was also presented in the registry for record. The registrar denied the admission to record requested and this court held that the title should be admitted to record because the proceeding was not in conflict with the due process of law clause of the Constitution.

CONSTITUTIONAL LAW — CONSTRUCTION OF LAW — PRESCRIPTION. — The Judicial
    Order of April 4, 1899, cannot be considered unconstitutional merely because
    it reduced to six years the period of prescription of twenty years provided
    for in article 393 of the Mortgage Law for the conversion of a record of
    possession into a record of ownership.
ID.—CONSTRUCTION OF LAW.—The Supreme Court of the United States held, at
    most, in the case of *Ochoa* v. *Hernández* (230 U. S., 139) that the Judicial
    Order of April 4, 1899, is inconsistent with the due process of law clause of
    the Constitution as regards its retroactive effect which, in said case, deprived
    certain minors of their rights.
ID.—MILITARY GOVERNORS—VALIDITY OF GENERAL ORDERS.—Congress having rati-
    fied the orders of the American Military Governors of Porto Rico, it cannot
    be held that the said Governors lacked authority to amend the laws in force
    in this Island at that time, among which was the Mortgage Law, which, with
    some modifications, it still in force, unless first the Governors and then the
    Congress exceeded the limitations prescribed by the Constitution in the exer-
    cise of their powers.

The facts are stated in the opinion.

*Mr. Gabriel Guerra* for appellants.

Mr. José Benedicto, the registrar, did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an administrative appeal from a decision of the
Registrar of Property of San Juan, Section 2, refusing to
convert a record of possession into a record of ownership.

Henry A. Damers and Arthur W. Kuenzli prosecuted pro-
ceedings in the Municipal Court of Bayamón to prove their
possession of a rural property containing 20 *cuerdas* of land
and obtained a decision in their favor on July 19, 1900, which
they recorded in the Registry of Property of San Juan on
September 7 of the same year.

On June 10, 1913, the said Damers and Kuenzli applied to
the registrar for a certificate showing the foregoing facts
and that prescription had not been interrupted. The regis-
trar issued the certificate and the interested parties then
brought proceedings in the Municipal Court of Bayamón for
the purpose of converting the possessory title into a domin-
ion title, in which the following decision was rendered:

"In the Municipal Court for the Municipal Judicial District of
Bayamón. Henry A. Damers and Arthur W. Kuenzli, *ex parte.*
Conversion of record of possession into a record of ownership.

*Whereas:* Henry A. Damers and Arthur W. Kuenzli, 35 and 36 years of age respectively, property owners and residents of this city, represented by Gabriel Guerra, their attorney, have prosecuted the proper proceedings before this court for the purpose of converting into a title of ownership their possessory title to the following property: A parcel of land situated in the ward of Pájaros of this municipal district composed of twenty *cuerdas,* bounded on the north by the River Hondo; on the south by lands belonging to Thomas Cruce and Saturnino Román; on the east by lands belonging to Aniceto Padilla; and on the west by lands belonging to Elena Gaetán. *Whereas:* The proper notice to persons who might be affected by such conversion was published in the newspaper known as *The Times* in its issues of July 10, 11 and 12 of the present year without eliciting any objection notwithstanding the fact that more than the fifteen days fixed in the said notice have elapsed, and it appearing from a certificate issued by the registrar of property that prescription has not been interrupted: *Therefore:* in accordance with the provisions of article 393 of the Mortgage Law and article 441 of its Regulations and the Judicial Order of April 4, 1899, these proceedings are adjudged to be closed and it is ordered that a certificate in duplicate issue to the petitioners to the end that the registrar of property of the district may convert into a dominion title the record of possession of the said property. Done in open court this 22d day of August, 1913. José J. Acosta y Acosta, Municipal Judge. José Torres Muñiz, Secretary of the Municipal Court.''

The foregoing decision, accompanied by all antecedent documents, having been presented in the registry, the registrar denied the conversion for the reasons stated in the following decision:

''The conversion requested by virtue of the foregoing document is denied, because the twenty years prescribed in article 393 of the Mortgage Law have not elapsed since September 7, 1900, the date of the record; for although the Judicial Order of April 4, 1899, reduced the said period to six years, the Supreme Court of Washington, in its judgment of June 16 of the present year, held that General Guy V. Henry, who issued the said order, had no authority to amend the Mortgage Law and consequently could not reduce to six years the period fixed for such conversion. This being the case, the said order is void and the provisions of article 393 of the said law remain in full

force and effect. In lieu of the conversion requested a marginal note for the legal period has been entered on folio 2, over, volume 40 of Bayamón, property No. 1953, on the margin of record 1, stating, besides, the curable defect of failure to show that the order declaring the proceedings closed is final and unappealable. San Juan, P. R., September 5, 1913.''

From that decision the interested parties took this appeal, attacking the refusal without referring to the curable defect stated in the decision.

Let us see whether the Supreme Court of the United States made the statement upon which the registrar bases his refusal, namely, that General Henry lacked authority to amend the Mortgage Law and, therefore, to reduce to six years the period allowed for converting a possessory title into a dominion title.

The decision to which the registrar refers is in the case of *Ochoa* v. *Hernández,* 230 U. S., 139, in which the Supreme Court of the United States affirmed the judgment of the District Court of the United States for Porto Rico. The facts are as follows:

José María Hernández, the paternal grandfather of the plaintiffs, was at the time of his death in the year 1872 the owner and in possession of a tract of land in which was included the parcel of 106 acres in controversy. His title to this parcel was never recorded. Upon his death his son, Juan Hernández, became the owner of it by inheritance and entered into and remained in possession thereof until his death, which occurred in the year 1887, but his title was never recorded. At his death Juan Hernández left surviving him two young children, the plaintiffs, and his widow, their mother. She died in the year 1906, and the plaintiffs, who were still minors, became the sole owners of said property by inheritance from their father, but their title was never recorded.

In the year 1890 the title to the land in question did not appear of record in the name of any person, either in the books of the present or modern registry or in the books of

the old registry, the ancient *anotadurías* or *contadurías*. In that year Raimundo Morales, the maternal grandfather of the plaintiffs, fraudulently representing himself to be the owner of the property, appeared before the Municipal Court of Naranjito and obtained from that court a decree declaring him to be entitled to the possession of the land, without prejudice to third parties who might show a better right to such possession. The possessory title so obtained was recorded in the proper registry of property in the same year, and was the only title to the land then appearing recorded in the registry. In the year 1899 Morales again appeared before the same court and petitioned for a decree converting his possessory title into a title of ownership. His petition was based upon the provisions of the Judicial Order of April 4, 1899, promulgated in the *Official Gazette* of Porto Rico on April 7, 1899. This order was made under the authority of Major-General Guy V. Henry, United States Volunteers, at that time Military Governor of Porto Rico, and by its terms it reduced from 20 years to six years the period during which real estate must be held in order to permit the conversion of a possessory title into a dominion title. At the instance of Morales, such proceedings were had in the municipal court as were provided for by the said judicial order and the court in due time rendered a decision decreeing that the record or possessory title which appeared in the registry in favor of Morales be converted into a dominion title or record of ownership. Thereafter, and in the same year (1899), this decree was recorded by Morales in the proper registry of property, and by virtue thereof the dominion title to the property was recorded in his name.

In the year 1901, there appearing in the registry no claim or right or title in the land on the part of any other person or persons, Morales, still representing himself to be the true owner, mortgaged the land for value to the defendants, constituting the firm of J. Ochoa y Hermano, who truly and in good faith believed Morales to be the owner and were entirely

ignorant of the rights of the plaintiffs therein. The mortgage was recorded in the proper registry of property in the same year. Thereafter, and in the year 1903, the record still showing nothing respecting the ownership of the land besides the dominion title of Morales and the mortgage of the defendants, and they being still ignorant of the rights of the plaintiffs, Morales, by a deed duly executed before a notary public, in which his wife joined, sold and transferred the land to the defendants in full payment of the amounts due and secured by the mortgage. The defendants duly recorded the deed in the same year, and by their agent immediately took possession of the land. The action was begun in 1908, shortly after the plaintiffs arrived at full age.

Upon these facts the District Court of the United States concluded as a matter of law that the Judicial Order of General Henry dated April 4, 1899—so far as it acted retrospectively upon the rights of the plaintiffs, who were minors at the time and for some time thereafter, and who owned the land during the entire period of nine years that elapsed between the fraudulent entry of possessory title in the name of their maternal grandfather, Morales, and the promulgation of General Henry's order—was null and void because in contravention of the "due process of law" clause of the Fifth Amendment to the Constitution of the United States.

The foregoing facts having been established, the Supreme Court of the United States, through Mr. Justice Pitney, made an extensive and careful study of the facts and the law, fixed the scope of records of possessory titles, analyzed the provisions of the Mortgage Law pertinent to the case and then proceeded to consider the fundamental question on which the lower court based its judgment. In doing this it related the necessary historical facts, stated the sources whence the Military Governors of Porto Rico derived their authority during the American occupation, and said:

"Under all the circumstances we deem it clear that the Governor was without authority from the President to make any order, judicial

in its nature, that would have the effect of depriving any person of his property without due process of law.

"It is said that section 8 of the Foraker Act (31 Stat., 79, c. 191) had the effect of ratifying the judicial order of General Henry. That section declared: 'That the laws and ordinances of Porto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by Act of Congress of the United States,' with provisos not now pertinent. We find here no legislative purpose to validate any order of the Military Governor that was in excess of the authority conferred upon him by the President.

"Without the guaranty of 'due process' the right of private property cannot be said to exist, in the sense in which it is known to our laws. The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 48, 50), and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing.

"Now, the effect and operation of the retroactive clause in the Judicial Order of April 4, 1899, as applied to the facts of the concrete case, were such that although Morales had until then no right, title, or interest in the land in question, and had merely established through fraudulent means and without notice to the persons concerned a footing of possession, as a result of which, if they should permit his claims to remain unchallenged, and he should in fact maintain continuous possession for nearly twelve years longer, he would thereby be enabled to procure, by *ex parte* proceedings, an apparent title in himself as against them; yet the Order permitted him at once, and without notice to the owners, to procure such record of ownership in his name, although they were then infants, and, so far as appears, not cognizant of his possession of the land or of any of his proceedings; and then by virtue of other provisions of the Mortgage Law, he could completely deprive them of their property if he could make

sale of it to a *bona fide* purchaser without notice of the infirmity of his apparent title.

"With reference to statutes of limitations, it is well settled that they may be modified by shortening the time prescribed, but only if this be done while the time is still running, and so that a reasonable time still remains for the commencement of an action before the bar takes effect. *Terry* v. *Anderson,* 95 U. S., 628, 632; *In re Brown,* 135 U. S., 662, 701, 705; *Wheeler* v. *Jackson,* 137 U. S., 245, 255; *Turner* v. *New York,* 168 U. S., 90, 94; *Wilson* v. *Iceminger,* 185 U. S., 55, 63. Many other cases might be cited. The question of what, under given circumstances, is to be deemed a reasonable time to be allowed for the bringing of an action when a change is made in a statute of limitations' has sometimes given rise to discussion. In the present case there is no such embarrassment, for here no time whatever was allowed with respect to the case of these appellees and all others against whose lawful ownership an unlawful possession had been held for more than six years but less than twenty years at the time of the making of the Judicial Order.

"Since the proceedings for converting the entry of possession into a *dominio* title, as well as the proceeding for the entry of possession itself, were taken without notice to the owners, the effect of the Judicial Order was precisely the same as if the Military Governor had declared that the property in question should be taken from the lawful owner and given to the fraudulent occupant. Certainly General Henry can have had no such purpose, and must have been wrongly advised with respect to the results that would flow from making the order retroactive. Otherwise he would have confined it to cases where there still remained a reasonable opportunity for the real owner to contest the pretensions of the possessor. And in view of the instructions under which he derived his authority, the Judicial Order must be construed as if expressly thus limited."

After a careful study of the decision in the Ochoa case, bearing in mind the facts on which the same is based and the extracts transcribed therefrom, we are of the opinion that it has not the scope given to it by the Registrar of Property of San Juan in this case.

In the Ochoa case the conversion of a possessory title into a dominion title was made by the municipal court and was recorded in the registry in the year 1899, or in the same year

in which the Judicial Order of April 4 was promulgated. If the said Order was applicable to that case, it was due solely and exclusively to the provision of section 7 by which its provisions were given a retroactive effect.

On the other hand, the retroactive clause of the Judicial Order has no application whatever to the case now before us for consideration. The possessory title proceedings prosecuted by Damers and Kuenzli were recorded in the registry in the year 1900 and the conversion into a dominion title was decreed by the municipal court in the year 1913, or 14 years after the promulgation of the Judicial Order of April 4, 1899.

Said Judicial Order, which was ratified by section 8 of an Act of Congress temporarily to provide revenues and a civil government for Porto Rico and for other purposes, approved April 12, 1900, cannot be considered unconstitutional on the mere ground that it abridged the period of prescription prescribed by the Mortgage Law for the conversion of a possessory record into a record of ownership; for, according to the doctrine laid down in the very case of Ochoa, "With reference to statutes of limitations, it is well settled that they may be modified by shortening the time prescribed, but only if this be done while the time is still running, and so that a reasonable time still remains for the commencement of an action before the bar takes effect."

Congress having ratified the orders of the American Military Governors of Porto Rico, it cannot be held that said Governors lacked authority to amend the laws in force in this Island at that time, among which was the Mortgage Law, which, with some modifications, is still in force, unless first the Governors and then the Congress had exceeded the limitations imposed by the Constitution in the exercise of their powers.

In view of all the foregoing, the Supreme Court of the United States not having held in the case of *Ochoa* v. *Hernández,* 230 U. S., 139, as is claimed by the registrar, "that General Guy V. Henry, who issued the said Order (that of

April 4, 1899), had no authority to amend the Mortgage Law and consequently could not reduce to six years the period fixed for such conversion," but it having held at most that the said judicial order was inconsistent with the "due process of law" clause of the Constitution as regards its retroactive effect, which, in the particular case decided, deprived certain minors of their rights, we must conclude that the decision of the registrar is not well founded and should be reversed.

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred.

Mr. Justice Wolf signed stating that he concurred in the judgment for the reasons given in a separate concurrent opinion.

### CONCURRENT OPINION OF MR. JUSTICE WOLF.

I agree with the judgment of this court and with the opinion in so far as it holds that the decision of the Supreme Court of the United States in the Ochoa case does not apply to the facts of the appeal before us. I also agree with the court that the decision of the Supreme Court did not say that General Henry had no authority to modify the Mortgage Law in force in Porto Rico. Indeed, the opinion cited indicates that General Henry had such authority provided a reasonable time was given owners to contest the proceeding. *Ochoa v. Hernández,* 230 U. S., 162. The same thing also follows impliedly from the discussion of the principle that statutes curtailing prescription should allow a reasonable time.

However, the opinion written by Mr. Justice Pitney does not say how much of the order of General Henry was without authority. Perhaps it is a reasonable conclusion from the opinion that the court meant that the retroactive part of the order was without authority, but the opinion may mean other things as when it says that a reasonable period to contest the *posesorio* or *dominio* must be given as against all

those whose possession at the time of the promulgation of the order was less than twenty years. *Ochoa* v. *Hernández, supra,* p. 162. In this appeal the possession was begun in 1900, or after the order of General Henry was promulgated. Hence the reasoning of *Ochoa* v. *Hernández* is not applicable. This court has never questioned the reasonableness of the curtailment from twenty to six years, and in the case before us the appellants had possession for more than ten years, the time limited in section 1858 of the Civil Code as to persons present. There is no question here of the retroactive effect of General Henry's order, and hence I agree with the court that the order of the registrar should be reversed.