Joseph WILLIAMS, Plaintiff,

v.

Robert F. KENNEDY, Attorney General of the United States, and Dominick F. Rinaldi, District Director, Immigration and Naturalization Service, District of New Jersey, Defendants.

Civ. A. No. 669–62.

United States District Court
D. New Jersey.

Oct. 2, 1962.

Amerigo D'Agostino, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Sidney E. Zion, Asst. U. S. Atty., for defendants.

WORTENDYKE, District Judge.

Plaintiff filed a verified complaint in this Court on August 15, 1962, under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C.A. § 1009, in which he seeks to restrain the defendant from taking him into custody and deporting him, pursuant to an administrative order for his deportation on August 24, 1962. Upon the filing of that complaint, this Court made an order to show cause why the preliminary injunctive relief prayed for should not be granted. On the return of that order, the defendant agreed to an administrative stay of plaintiff's deportation, and the hearing was continued until the 10th day of September, 1962.

On September 7, plaintiff filed an amended complaint in which he attacked the constitutionality of section 106 of the Immigration and Nationality Act of 1952 as amended by section 5(a) of the Act of September 26, 1961, 8 U.S.C.A. § 1105a. As well as enlarging the relief which plaintiff seeks, he now additionally relies upon 8 U.S.C.A. § 1503.

Upon the return day of the order to show cause, the Court heard oral argument with regard to the request for temporary restraint and reserved decision thereon. Thereafter, on September 18, 1962, and while the Court's decision was pending, plaintiff filed a document entitled "Request for a Three Judge Court" in an effort to conform his amended complaint to the procedure required where a constitutional attack on a federal statute is involved. On September 24th this Court heard argument respecting the necessity for requesting the convening of a Three-Judge Court to hear the case, upon the amended complaint, and again reserved decision.

In substance, plaintiff seeks from this Court, under the Declaratory Judgment Act, Administrative Procedure Act and 8 U.S.C.A. § 1503, a determination that he is a citizen of the United States, and entitled, therefore, to continue to reside here. Specifically, he seeks (1) that defendant be temporarily restrained from taking him into custody and deporting him; (2) the appointment of a Three-Judge Court; and (a) a hearing de novo on the question of his citizenship.

The Government contends that this Court should deny plaintiff's request for a Three-Judge Court, because of lack of a substantial constitutional question; and that the amended complaint should be dismissed, for lack of jurisdiction by reason of 8 U.S.C.A. § 1105a.

The Immigration and Naturalization Service, after considering the evidence produced by plaintiff as to his citizenship, determined that he was an alien, and consequently ordered his deportation. That evidence is not before me.

Plaintiff alleges in the present action, as he contended in the deportation pro-

ceedings, that he was born on John's Island, Charleston County, South Carolina, on August 19, 1900, and that he has never abandoned nor relinquished the citizenship which he acquired by virtue of the fact and place of his birth. He annexes to his verified complaint a copy of a certificate of birth, issued by the Clerk of Charleston County, South Carolina, which purports to certify that on August 19, 1900 a boy child of negro race and American nationality, bearing the name of Joseph Williams, was born in the Township of John's Island in said County, to John Williams, his father, and Maria, nee Pinckney, his mother. The plaintiff also annexes to his complaint a copy of a letter from the County Superintendent of Education for Charleston County, South Carolina, purporting to certify that Joseph Williams attended Ferry Field School on John's Island, Charleston County, S. C., from 1910 to 1912; and that he left school when approximately 12 years of age, at which time his teacher was Mrs. Millie Ellison Brown. It is further alleged by the plaintiff that he resides at 53 Heddon Terrace, Newark, New Jersey, and that since 1952 he has conducted a general contracting business in that City. In a supporting affidavit, plaintiff sets forth additionally that he was taken from South Carolina at about the age of 12 or 14 and brought to Bermuda, Puerto Rico, and Jamaica, traveling between these places and the United States, as a cook's helper on steamers. He denies having had any intention to abandon his domicile or citizenship in or of the United States, and claims to have resided continuously therein since 1940.

Section 1105a, enacted September 26, 1961, provides that, where an alien seeks judicial review of an order of deportation, he may invoke the jurisdiction of the *Circuit* Court for the judicial circuit in which the administrative proceedings were conducted, or the Circuit wherein the petitioner resides. Subparagraph 5 provides that in the event the petitioner claims to be a national of the United States, and makes a showing that his claim is not frivolous, the case, where an issue of material fact is presented, shall be transferred to the United States District Court for a hearing de novo on the nationality claim. Section 1105a provides that the jurisdiction of the Circuit Court shall be exclusive but for the remedy of habeas corpus, when review of a deportation order is sought, and further, that such relief must be applied for within six months from the time of the order, or from the effective date of the section, whichever is later.

Plaintiff complains that this six months limitation is, as to him, arbitrary, discriminatory and unfair, and further that 1105a(a) (1) is unconstitutional in that:

"(a) It is not a reasonable or proper exercise of foreign affairs, war, or other power of Congress.

"(b) Under the Fifth Amendment and otherwise a native born citizen may not constitutionally be deprived of his American nationality against his will.

"(c) The resulting deprivation is so severe as to contravene the Eighth Amendment's protection of persons against cruel and unusual punishment * * *."

■■■ It is well settled law, and was early established in this country, that "Every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 659, 12 S.Ct. 336, 35 L.Ed. 1146. It is equally well established that the power to legislate in this area, including the power to deport aliens, derives from the constitutional power of Congress to regulate foreign commerce. The Chinese Exclusion Case, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). As was said in Carlson v. Landon, 1952, 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547: "The power to expel aliens, being essentially a power of the political branches of

government, the legislative and executive, may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as Congress may see fit to authorize or permit.' * * * Deportation is not a criminal proceeding and has never been held to be punishment. * * * No judicial review is guaranteed by the Constitution." Of course, this jurisdiction in the executive and legislative to order deportation only exists if the person is an alien, and if the person claims to be a citizen of the United States the Fifth Amendment guarantees protection against the danger of such deportation. In such a case, the writ of habeas corpus is available to determine petitioner's status. Ng Fung Ho v. White, 1922, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938.

In Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972, the Supreme Court stated that the only Constitutional requirement for the protection of those under order of deportation is that they have the right to habeas corpus.[1] The Court interpreted a quarter of a century of judicial decisions as limiting judicial intervention in deportation matters to instances where it was required by the Constitution, i. e. by Writ of Habeas Corpus. There being no obligation upon Congress to grant judicial review, it is difficult to understand how, where it chose to do so, such procedure can be unconstitutional, no matter how limited it is in scope.

▪ Prior to passage of § 1105a, a person ordered deported, who wished to obtain a judicial determination of his nationality, had the right to sue under § 2201 of Title 28, within five years after the final administrative denial of his United States nationality. Section 1105a specifically deprives one in plaintiff's position of all right to proceed under § 1503, and requires that application be made to the Circuit Court within six

months if judicial determination of nationality is desired. It is this reduction in the time within which to seek review that the plaintiff asserts is unconstitutional.

In Wheeler v. Jackson, 1890, 137 U.S. 245, 255, 11 S.Ct. 76, 34 L.Ed. 659, the Court stated: "It is the settled doctrine of this court that the legislature may prescribe a limitation for the bringing of suits where none previously existed, as well as shorten the time within which suits to enforce existing causes of action may be commenced, provided, in each case, a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of suit before the bar takes effect (citing cases)." In that case the legislature of New York provided that no action could be commenced against the City of Brooklyn or the Registrar of Arrears to compel the execution or delivery of a lease upon any sale for taxes, etc. made more than 8 years prior to the date of enactment of the statute unless commenced within six months after that date. In § 1105a(a) (1) of Title 8, the petition for review "may be filed not later than six months from the date of the final deportation order or from the effective date of this section, whichever is the later." Bearing in mind the nature of the action in that often long periods of time are required before an administrative decision to deport is reached, it is appropriate to limit the period within which review may be sought. Under all the circumstances, I find that such period of limitation is entirely reasonable. Further, bearing in mind the lack of obligation upon Congress to permit any judicial review, plaintiff's claim of unconstitutionality of the limitation in the provision therefor is without merit. This conclusion does not mean that by his failure to timely file suit for review plaintiff is forever barred from obtaining a

---

[1] This case was decided under the law in effect prior to the passage of the Immigration and Nationality Act of 1952, which, by § 360 thereof, 8 U.S.C.A. § 1503, authorizes and provides a means of determining the question of one's nationality when a right or privilege incident thereto is denied by any department, agency or official of the United States.

judicial hearing upon the question of his citizenship. In Gonzalez-Gomez v. Brownell, D.C.Cal.1953, 114 F.Supp. 660, plaintiff attacked the constitutionality of 8 U.S.C.A. § 1503, which conferred jurisdiction on the Federal District Court to adjudicate nationality provided the issue of petitioner's nationality did not arise in connection with any exclusion proceeding. The plaintiff, falling within the proviso, contended that, because of this exclusion, the question of his citizenship was left (p. 661) "to the discretion, determination and whim of an executive officer without hope of judicial review or remedy." The Court, also at p. 661, stated "The statute does not deprive *any* citizen of his day in court. It merely limits relief under this *particular* statute to specified situations, and those who do not fall within the provisions of the statute are left to the remedies, such as habeas corpus, which existed prior to its enactment."

 Having concluded that plaintiff's contentions of unconstitutionality are without merit and insubstantial, I exercise my authority as a single Judge by refusing to grant plaintiff's prayer for the convocation of a Three-Judge Court. German v. South Carolina State Ports Authority, 4 Cir. 1961, 295 F.2d 491.

I further determine that the motion of the Government for dismissal of the action must prevail. Plaintiff seeks review under the Administrative Procedure Act, 5 U.S.C.A. § 1009 and a declaratory judgment that he is not an alien and hence not subject to deportation. 8 U.S.C.A. § 1503, 28 U.S.C. § 2201.

It is clear, under the decision in Frank v. Rogers, 1958, 102 U.S.App.D.C. 367, 253 F.2d 889, that both procedures were available to one under order of deportation, prior to 1961, before § 1105a was passed. As noted above, § 1105a specifically precludes an alien who seeks review of an order of deportation from availing himself of the provisions of § 1503.

In Rassano v. Kennedy, 7 Cir. 1961, the Court dismissed plaintiff's appeal, stating that 8 U.S.C.A. § 1105a precluded the right to rely upon 8 U.S.C.A. § 1503.

The one question remaining is whether or not review may still be had under the provisions of § 10 of the Administrative Procedure Act. I think not.

Section 1105a states that its remedy is exclusive, and in § 1105a(a) (5) where specific reference is made to the inapplicability of § 1503 of Title 8, the Congress expressly states that such issue of nationality is not to be determined under said § 1503 *or otherwise.* (Emphasis supplied.) The only logical construction of this piece of legislation precludes review under both § 1503 of Title 8, and § 1009 of Title 5. The defendant's motion to dismiss is granted. Submit order.