## UNION PACIFIC RAILROAD COMPANY *v.* SNOW.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 682. Submitted October 14, 1913.—Decided December 1, 1913.

Courts will not enforce a literal interpretation of a statute if antecedent rights are affected or human conduct given a consequence the statute did not intend.

*Union Pacific Railroad Co.* v. *Laramie Stock Yards, ante,* p. 190, followed to effect that the act of June 24, 1912, c. 181, 37 Stat. 138, permitting state statutes of limitation to apply to adverse possession of portions of the right of way granted to railroads under the act of July 1, 1862, did not have retroactive effect.

Courts are repelled from giving such a construction to a statute as will raise grave doubts of its legality as well as of its justice.

The act of June 24, 1912, did not amount to a forfeiture of that part of the right of way granted under the act of July 1, 1862, not actually occupied by the railroads; *quære* whether such a construction of the act of 1912 would not render it illegal.

133 Pac. Rep. 1037, reversed.

THE facts, which involve the construction and application of the Railroad Land Grant Act of July 1, 1862, and the act of June 24, 1912, and the extent of rights claimed to have been acquired under the latter act by adverse possession in a railroad right of way, are stated in the opinion.

*Mr. N. H. Loomis, Mr. C. C. Dorsey* and *Mr. E. I. Thayer* for plaintiff in error.

*Mr. Milton Smith, Mr. Charles R. Brock* and *Mr. W. H. Ferguson* for defendants in error:

Any title which plaintiff or its predecessors ever had in or to the premises in controversy emanated from the act of July 1, 1862, and was a limited or determinable fee conditioned upon the continued use of said right of way for railroad purposes. *Stuart* v. *Un. Pac. R. R. Co.*, 227 U. S. 342; *M., K. & T. R. Co.* v. *Kan. P. R. Co.*, 97 U. S. 491, 494; *United States* v. *Kan. P. R. Co.*, 99 U. S. 455; *Nor. Pac. Ry. Co.* v. *Smith*, 171 U. S. 260; *Nor. Pac. Ry. Co.* v. *Townsend*, 190 U. S. 267, 271; *Nor. Pac. Ry. Co.* v. *Ely*, 197 U. S. 1; *Oregon Short Line* v. *Quigley*, 10 Idaho, 770; *Universalist Society* v. *Boland*, 155 Massachusetts, 171; Greenleaf's Cruise on Real Property, Tit. 13, c. 2, § 64; 2 Blackstone, 155; 4 Kent's Comm. (13th ed.), 134; *D. & S. F. Ry. Co.* v. *School District*, 14 Colorado, 327.

Under the allegations contained in the second defense of the answers, the title or ownership of the land in controversy was claimed by or through adverse possession of the character and duration prescribed by the laws of Colorado, and the Supreme Court of Colorado in these cases held that the allegations of said second defense were sufficient under the state statutes to establish title by adverse possession. *Snow* v. *Un. Pacific R. R. Co.*, 133 Pac. Rep. 1037; *Sides* v. *Un. Pacific R. R. Co.*, 133 Pac. Rep. 1040; *Laas* v. *Newkirk*, 39 Colorado, 78; *Hurd* v. *McLellan*, 1 Colo. App. 327; *Latta* v. *Clifford*, 47 Fed. Rep.

614, 619; *Elder* v. *McClaskey,* 70 Fed. Rep. 529; *Scott* v. *Mineral Development Co.*, 130 Fed. Rep. 497; *S. C.*, certiorari denied, 196 U. S. 640; *Harending* v. *Reformed Dutch Church*, 16 Pet. 455; *Santee River Cyprus Co.* v. *Jones*, 60 Fed. Rep. 360; *United States* v. *One Lot of Land*, 178 Fed. Rep. 334; *Green* v. *Neal*, 6 Pet. 291.

The title acquired by defendants under the adverse-possession statutes of Colorado was precisely equivalent in contemplation of law to such title as they would have acquired had the railroad company expressly granted to them all its right, title, and interest in the premises. *Nor. Pac. Ry. Co.* v. *Ely,* 197 U. S. 1; *Sharon* v. *Tucker*, 144 U. S. 533, 543; *Toltec Ranch Co.* v. *Cook*, 191 U. S. 532, 538; 3 Washburn on Real Property (5th ed.), 176.

The implication of a grant from the railroad company arising out of the adverse possession of the defendants is conclusive evidence of a voluntary abandonment of the premises by the railroad company. *Stevens* v. *Norfolk*, 42 Connecticut, 377; *Livermore* v. *White,* 74 Maine, 452; *Myers* v. *Spooner*, 55 California, 257; *Davis* v. *Perley*, 30 California, 630; *North American Co.* v. *Adams*, 104 Fed. Rep. 404.

The act of June 24, 1912, was equivalent to a reëntry or declaration of forfeiture or reverter upon the part of the United States of the land in controversy, because of its abandonment and non-user as a railroad right of way, and had the effect of confirming in the defendants the title acquired by them by adverse possession and under the patent issued by the United States to their predecessor in title on November 5, 1878. *Nor. Pacific Ry. Co.* v. *Ely,* 197 U. S. 1; *Atl. & Pac. R. R. Co.* v. *Mingus*, 165 U. S. 413, 430; *Schulenberg* v. *Harriman,* 21 Wall. 44; *Spokane & B. C. Ry. Co.* v. *Washington &c. Ry. Co.*, 219 U. S. 166.

A legislative act passed subsequent to the entry of a judgment in a lower court, and while a case is pending in an appellate court on appeal or writ of error, may be con-

sidered and applied by the appellate court. *Pennsylvania*
v. *Wheeling Bridge Co.*, 18 How. 421, 430; *Nor. Pac. Ry.*
v. *Ely*, 197 U. S. 1; *United States* v. *Schooner Peggy*, 1 Cr.
103, 110; *Am. Sugar Co.* v. *New Orleans*, 119 Fed. Rep.
691; *Canal Co.* v. *Western Md. R. R. Co.*, 99 Maryland, 570.-

Mr. Justice McKenna delivered the opinion of the
court.

This case was submitted at the same time as No. 570,
just decided. It is ejectment for lands, part of the right of
way granted to the Leavenworth, Pawnee & Western
Railroad Company by the act of July 1, 1862, c. 120,
12 Stat. 489, to which right of way plaintiff in error
(designated herein as plaintiff) is the successor. The
action was brought in the District Court of Arapahoe
County, State of Colorado.

The sufficiency of the complaint is not questioned, and
it is enough to say that it is, in legal effect, the same as in
case No. 570, with only such differences as are necessary.

The answer of defendants in error (called herein defend-
ants) set up three defenses and a counter claim. The first
answer admits the incorporation of plaintiff and denies all
other allegations of the complaint. The second defense
alleges that under certain acts of Congress, subsequent to
the act of 1862 and prior to the incorporation of the com-
panies, the right of way of the companies was made 200
feet wide instead of 400 feet, that is, 100 feet from the
center line of the railroad track. That the land sued for,
which is in possession of the defendants, is more than 100
feet from such center line; that neither plaintiff nor any
of its predecessors have been in possession of any portion
thereof and have not used the same, nor has it needed to
use the same for railroad purposes. That defendants,
and those under and through whom they claim title,
acquired the title under and by virtue of a patent from the

United States issued November 5, 1878, and various mesne conveyances and have been in the adverse possession of all of the property described continuously since the patent was issued, which is more than the full period of seven years next before the institution of the action; have paid and caused to be paid taxes thereon, and that defendants now plead and rely upon the statute of limitations of the State of Colorado.

The third defense alleges that the right received by the corporation which was created by the act of Congress of 1862 or by its successors or assigns was at most, the grant of a limited fee and made on the condition that the property should revert to the United States if it should not be appropriated and used for a railroad within a reasonable time or should cease to be used for railroad purposes. That thereafter, before the land was used for such purposes, the right of reverter which was retained by the United States, was conveyed by the United States to defendants and their grantors by a patent which was issued by the United States to the vendor of defendants in 1878. That neither plaintiff nor any of its predecessors used or occupied the land for railroad purposes or for any purposes whatever and on account thereof lost any and all right thereto and the property reverted to the United States and to defendants; that neither plaintiff nor any of its predecessors ever needed the property or any part thereof for railroad purposes and can never use the same for such purposes. That on account of failure to use or occupy the land for a period which now approximates fifty years next ensuing after the approval of the act of 1862, the limited fee which may have been granted to plaintiff ceased and determined and the property reverted to the United States and its grantees.

The counter claim repeats some of the allegations in regard to the width of the right of way and defendants' adverse possession of the land outside of the 100 feet on

either side of the center of the railroad track, alleges the value of improvements made thereon by defendants at $1,500 and claims the reimbursement thereof in case of recovery by plaintiff.

Plaintiff demurred to the second and third defenses and to the counter claim. The demurrer was sustained. The case was subsequently tried on the issues made by the complaint and the first answer thereto.

At the trial the defendants objected to any testimony being introduced and moved to dismiss the complaint on the ground that no right of way was granted to plaintiff "at the place in dispute" or no grant of right of way in excess of 100 feet on either side of the center line of plaintiff's track. The objection was overruled and defendants excepted.

It was then stipulated that witnesses would testify to the various steps in the title of plaintiff, that the railroad was constructed over the right of way described in the complaint, and that the railroad and the main track thereof are now in the same location in which they were at the time of the original construction; that the predecessors in title of plaintiff complied with all of the requirements of the various acts of Congress in the complaint mentioned, and that plaintiff is the owner of the lands, if any, conveyed to its predecessor companies under and by virtue of the said acts of Congress; that the land described in the complaint lies within 200 feet of the center of the main track of the railroad, but outside of a line of 100 feet; that the railroad is part of the railroad constructed from the Missouri River at the mouth of the Kansas River westward to a connection with the main line of the Union Pacific, as authorized by the acts of Congress, and has been, since its construction, continuously operated as a railroad in connection with the main line of the Union Pacific at Cheyenne, Wyoming. That defendants withhold possession of the lands from plain-

tiff and that possession was demanded before the commencement of the action.

Judgment of nonsuit was moved on the grounds stated in the motion to dismiss; also judgment for defendants. Both motions were denied and plaintiff was adjudged owner in fee of the lands, and that defendants had no right, title or interest therein. Judgment was entered accordingly. The judgment was reversed by the Supreme Court of the State. 133 Pac. Rep. 1037.

The Supreme Court decided that the Kansas Pacific became vested by the acts of July 1, 1862, and July 2, 1864, c. 216, 13 Stat. 356, with title to a right of way 400 feet wide through the land and that the Union Pacific, its successor in title, is the owner of the right of way. The court rested this conclusion on *Stuart* v. *Union Pacific Railroad Co.*, 227 U. S. 342. It hence decided that "the determination of the court of the facts found upon the issue raised by the first defense was . . . in conformity with the decision of the Supreme Court of the United States." And the Supreme Court also decided that the District Court, in sustaining the demurrer to the second defense which pleaded the statute of limitations, followed the decision of this court, and cited *Kindred* v. *Union Pacific Railroad Co.*, 168 Fed. Rep. 648, 653; *S. C.*, affirmed 225 U. S. 582; *Northern Pacific Railroad Co.* v. *Smith*, 171 U. S. 260, 267; *Northern Pacific Railway Co.* v. *Ely*, 197 U. S. 1; *Northern Pacific Railway Co.* v. *Townsend*, 190 U. S. 267, to the effect that individuals could not for private purposes acquire by adverse possession under state statutes any portion of a right of way granted by the United States to a railroad company. "So," the court said, "it is plain that prior to June 24, 1912, an individual could not acquire title to any portion of the 400 feet right of way by the statute of limitations or adverse possession, and the judgment of the lower court on this issue was correct." But it was remarked that the act of June 24,

though passed while the case was pending on appeal, nevertheless applied to the case, on the authority of certain cases which were cited.

The cited cases express the principle that a judgment, though not erroneous when rendered, may become so by a subsequent law. Or if an event occurs after an appeal which makes it impossible for the appellate court to enforce its decision, the case will be dismissed. *United States* v. *The Peggy*, 1 Cr. 103; *Board* v. *Glover*, 160 U. S. 170; *S. C.*, 161 U. S. 101; *Dinsmore* v. *Express Co.*, 183 U. S. 115. Two of the members of the court dissented and expressed the view that as the judgment of the lower court was "in strict conformity with the decisions of the Supreme Court of the United States, and therefore when rendered was not erroneous," it was the duty of the court to affirm it.

In deciding that the act of June 24 was controlling, the Supreme Court of Colorado necessarily gave retrospective operation to the act. This was error. *Union Pacific Railroad* v. *Laramie Stock Yards Co.*, decided this day, *ante*, p. 190.

It was contended in that case that the grant of the right of way was only a grant of the right to use and that whenever and if not so used or for any reason became forfeited, it would revert to the grantor. It was recognized that to enforce the forfeiture and convey the right which had reverted, some act of the United States was necessary. This condition, it was contended, was satisfied by the act of June 24, 1912, c. 181, 37 Stat. 138, enacted, it was further contended, under the power reserved to Congress by the acts of 1862 and 1864 to alter or amend the charters of the companies. We rejected the contention and we said, besides, that even if the act be so regarded, its effect was to be determined by the time it was intended to operate, whether retrospectively or prospectively. What we said is applicable here. It is contended here that the

right of way was derived through the act of July 1, 1862, and that the title granted to the companies "was a fee upon limitation, and that the estate continued *so long as,* or while, the railroad companies continued to use the land granted for railroad purposes, and terminated *ipso facto* by the cessation of such use." And it is further contended that no act was necessary upon the part of the United States to work the forfeiture or reinvest the United States with complete title to the land granted.

The bearing of the first contention we shall presently consider; the other has no foundation in the granting acts nor in the decisions interpreting them, some of which are cited above. It is opposed by the act of June 24, which leaves the right of way as originally granted and to the extent granted in the railroad companies, except where they had *theretofore* conveyed parts of the same and where parts of it shall be held by adverse possession.

It is, however, contended that if some act of the United States was necessary to effect a forfeiture of the right of way, the act of June 24, 1912, was sufficient for that purpose. If this be conceded, *arguendo,* and if it be also conceded that the grant of the right of way was of a limited fee, we are brought to a consideration of the effect of the act, whether it applies to a past or a future possession; and we have decided that it applies to the latter. *Union Pacific Railroad Co.* v. *Laramie Stock Yards Co., ante,* p. 190.

This conclusion is, of course, contested by defendants in an argument which it is, however, unnecessary to answer in detail. It is asserted that the act "operates *in præsenti* in so far as it conveys the reversionary interest of the United States to the persons entitled to the benefit of the act, or confirms their preëxisting titles." Special emphasis is put upon the words "is claimed" of the act as necessarily intended to apply to titles claimed at the time of the passage of the act by adverse possession. "Such

titles," it is said, "must have been initiated prior to the enactment of the act." For that reason, it is further said, "the act cannot be said to be retrospective, because the language used simply designates the classes of persons to whom confirmatory grants are made." But these con-siderations are simply the result of dwelling upon the literal terms of the act. But this is obnoxious to the rule of the cases. Courts will not, as we have seen, enforce a literal interpretation when by doing so antecedent rights are affected or human conduct given a consequence it did not intend. Such a purpose the courts refuse to assign to the legislature unless compelled by language explicit and imperative. And we have pointed out that we are repelled from so doing by grave doubts of its legality as well as of its justice. These considerations need not be further expanded. Their strength has been pointed out and their sufficiency to prevail over a literal interpretation of a statute.

> *Judgment reversed and cause remanded for further pro-ceedings not inconsistent with this opinion.*

MR. JUSTICE HUGHES dissents.

MR. JUSTICE HOLMES and MR. JUSTICE PITNEY took no part in the decision.