**CURLEY et al. v. TAIT, Collector of Internal Revenue, et al.**

(District Court, D. Maryland. November 29, 1921.)

No. 1109.

1. **Internal revenue ⬥⟿8—Reserved interest of decedent in securities transferred only held subject to estate tax.**

   A decedent, several years before his death, made an absolute transfer of certain securities, the transferee by a contemporaneous agreement binding itself to pay the net income to the wife of the transferor during her lifetime, and after her death, in case he survived her, to him during his lifetime. *Held*, that the estate was not subject to tax on the value of the securities themselves, under Act Sept. 8, 1916, § 202 (Comp. St. § 6336½c), but at most on the value of the reserved contingent interest of decedent therein.

2. **Internal revenue ⬥⟿8—Estate Tax Act not retroactive as to property transferred.**

   Act Sept. 8, 1916, § 202b (Comp. St. § 6336½c[b]), providing for a tax with respect to property of which a decedent has at any time made a transfer, is not retroactive, and does not apply to transfers made prior to its enactment; the words "at any time" being limited to a time subsequent thereto.

At Law. Action by John J. Curley and others, executors of the will of William H. Grafflin, deceased, against Galen L. Tait, Collector of Internal Revenue, and others. On demurrer to declaration. Overruled.

See, also, 276 Fed. 845.

J. Wallace Bryan, Charles McH. Howard, and Joseph C. France, all of Baltimore, Md., for plaintiffs.

Robert R. Carman, U. S. Atty., of Baltimore, Md., for defendants.

ROSE, District Judge. The plaintiffs, as executors of the executrix of the late William H. Grafflin, who died July 7, 1917, are here seeking to recover $23,927.22 paid the defendant under protest as an estate tax upon $285,655, being the aggregate value, at the testator's death, of various securities transferred at different times, within 7½ years before he died to either the Johns Hopkins Hospital or the Johns Hopkins University. As neither institution was, in the view of the government, to get any substantial benefit from the property until after the testator's death, the defendant says that the transfers were not intended to take effect in enjoyment until that time, and that, in consequence, the tax was properly collected.

The facts said to make the other securities taxable did not exist as to some Russian Roubles Internal 5's, worth, at the testator's death, $2,255. The inclusion by the government of these in its tax charge appears to have been the result of some mistake or misunderstand-

ing. They were given by Grafflin outright, and, as neither they nor any of the other property involved in this litigation was transferred in contemplation of death, the demurrer, so far as concerns the sum exacted upon them, must necessarily be overruled.

There are various minor differences in the terms of the transfers, but they were all alike, in that by each of them an out-and-out gift of the securities was made, and consummated by the issue and delivery of new certificates in the name of the grantee. It was expressly declared that the property conveyed was not charged with any trust. On the other hand, the Hospital, or the University, as the case might be, covenanted, in each of three agreements of transfer, that it would pay the net income during Grafflin's life to him, and after his death, and during such time as his wife should survive him, to her. After both of them were gone, the income, as well as the principal, was to be applied to the use of the grantee. The remaining one of the four, as it happened the earliest of them all in point of time, was in the nature of a marriage settlement. It recited that Grafflin was about to be married, and the Hospital, with whom this particular agreement was made, covenanted to pay, after the marriage was solemnized, the net income to the wife during her life, and afterwards to him during his life, if he should prove to be the survivor.

By the terms of one of the agreements, the grantee, during the continuance of the life estate, was, after paying taxes, to retain 1 per cent. of the income for itself; by another, 2½ per cent.; and by the others, 5 per cent., but in that case it was itself to pay the taxes, whether they amounted to more or less than the 5 per cent. retained. By most of them it was provided that anything in the nature of stock or bond dividends, or payments on account of cumulative preferred dividends then in arrear, should be treated as additions to principal. To the man in the street, the enjoyment of a share of stock would be found in the right to apply to his own uses the dividends that might be declared upon it, and from this standpoint there is so much force in the government's contention that neither Hospital nor University enjoyed their gifts during Grafflin's lifetime, that without further discussion it may, for the purpose of this case, be assumed to be sound, although it will be unnecessary so to decide.

Even so, and upon the further assumption to be hereafter critically examined, that the statute is retroactive, and covers these transactions entered into years before it was enacted, the query remains: Was the defendant justified in requiring the payment of the tax upon the full value of the stock transferred in contemplation of Grafflin's marriage, to the Hospital, which covenanted to pay the net income thereof to the prospective wife during her life; Grafflin reserving nothing of substance to himself except the right to the net dividends during so much of his life as should extend beyond hers, thus making his interest dependent altogether upon the contingency that he should prove to be the survivor? The government answers, Yes. It says that the Hospital was not to enjoy the stock until after his death. True; but is that all that is necessary?

[1] If all beneficial ownership and possession irrevocably passes from the transferror at the time of the transfer, it would seem to be immaterial whether it goes to one person or to several, and, if to several, whether their enjoyment is to be simultaneous or successive, and, if the latter, at what time or upon the happening of what event the rights of one give place to those of another. In the instant case, had the agreement provided that after Mrs. Grafflin's death, and during any period he survived her, the income should be paid to some one other than himself, there could, I imagine, have been no claim that any estate tax was chargeable. It follows that all that is taxable, if anything, is, in the language of the statute, "the interest" which he retained for himself. At the time the transfer was made, it was uncertain whether it would turn out to be worth much, little, or nothing. As he died before his wife, it proved to be in fact value-less. If its taxable worth is to be ascertained as of the date of his death, as is the clear statutory rule when applicable, there is nothing to tax. Of course, at the time the agreement was made, the retained interest had an ascertainable value to those concerns which deal in insurance policies, annuities, and like interests, the worth of any one of which is altogether uncertain, but the aggregate value of any large number of which can, from the mortality tables, be determined with approximate exactness.

The question of how such a contingent interest as Grafflin retained for himself under this agreement should be valued for estate tax purposes is not at all clear. Apparently what the statute had in mind in declaring that the value of the gross estate of the decedent shall be determined by including the value at the time of his death, of all property, etc., is what it said, and no more. That is to say, the value of the property is to be then determined as of that date and not his interest in it; for, if the latter were the case, any property which had been transferred by him in such manner that his interest ceased at death would have no taxable value, and that is clearly what the statute does not mean.

At the hearing the government was so confident that it was entitled to tax the full value of his interest, and the plaintiffs so certain that none of it should be taxed that neither of them discussed the question now mooted. As from what has been said it follows that the entire interest was not taxable, the demurrer to so much of the plaintiff's declaration as seeks to recover the tax exacted on all of it must be overruled. The question of whether the government was entitled to any part of the tax less than the whole need not be passed upon, and should not be, until the court is enlightened by further argument.

[2] All the above will be unimportant, if the conclusion to which I have arrived upon another contention of the plaintiffs shall ultimately be sustained. They say that no tax at all was collectable because the transfers here in controversy were all made before the statute was enacted. To this the government has two answers. It says that the statute itself declares that it has reference to a transfer made "at any

tion." These words, however, are susceptible of a reasonable construction, which would limit them to transactions taking place thereafter.

Congress may well have thought it important to make clear that the length of time before the death at which a transfer took place was not to be a controlling circumstance. The words used were apt to express that intention, and may well have been employed with the limitation, usually implied, that they were not to affect transactions which had already taken place. The rule, of course, is that statutes are not to be given a retroactive construction when by doing so "antecedent rights are affected or human conduct given a consequence it did not intend." Union Pacific Railroad Co. v. Snow, 231 U. S. 204–213, 34 Sup. Ct. 104, 58 L. Ed. 184.

For reasons which will be hereinafter set forth, this statute, if retroactively applied, will, in some instances, cause serious hardship and injustice. The courts have gone to great lengths in construing away language which, in its more natural import, seems to indicate that the Legislature intended the act should affect transactions which had been entered into before its passage. Union Pacific R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 Sup. Ct. 101, 58 L. Ed. 179. If this were a case of first impression, I personally would have no hesitation whatever in holding that the act of 1916 does not affect transfers made before it was passed.

But the government says, in the second place, that in Shwab v. Doyle, 269 Fed. 321, the Circuit Court of Appeals for the Sixth Circuit held the act to be retroactive. Diversity of decision is especially unfortunate in the construction of tax statutes, in which uniformity of interpretation and application are so important. Moreover, a court of equal rank would hesitate long before differing with a tribunal so eminent for wisdom and learning as that which has spoken on the subject. Nothing short of the clearest conviction will justify a District Judge in doing so; but there are rare occasions in which he must, because, as the law does not make a decision of a Circuit Court of Appeals binding outside of its own circuit, the responsibility of determination is one from which he cannot escape.

In Shwab v. Doyle, supra, the case of Wright v. Blakeslee, 101 U. S. 174, 25 L. Ed. 1048, was cited as authority for holding a similar statute retroactive. The act there construed imposed a tax upon the succession—that is, upon the right to receive—and was levied upon what passed to the heir, devisee, legatee, distributee, or successor, and not upon the estate. Knowlton v. Moore, 178 U. S. 41, 42, et seq., 20 Sup. Ct. 747, 44 L. Ed. 969. The distinction is neither pedantic nor technical, but, as applied to the matter now in hand, is in the highest degree practical. In Shwab v. Doyle, supra, it was held that the addition made by the act of 1918 (40 Stat. 1097 [Comp. St. Ann. Supp. 1919, § 6336¾c]), of the words "whether such transfer is made or occurred before or after the passage of this act," was a legislative construction, rather than an amendment, of the statute now under consideration. The Supreme Court has since taken the opposite view

as to other broadening language then first introduced.   U. S. v. Field, 255 U. S. 257, 41 Sup. Ct. 256, 65 L. Ed. ——.

The case before the Circuit Court of Appeals was one of a transfer made in contemplation of death.   It answered the objection to the practical hardships which a retroactive construction might entail by saying:

> "It is true that, if the tax before us is retroactive, it might, at least theoretically, affect conveyances made many years before a grantor's death: but this consideration is hardly practical.   Congress would, we think, scarcely be impressed with a practical likelihood that a transfer made many years before a grantor's death (say 25 years, to use plaintiff's suggestion) would be judicially found to be made in contemplation of death under the legal definition applicable thereto, and without the aid of the 2-year prima facie provision."

Apparently the court's attention was not drawn to some of the consequences which, in a case like the one at bar, would follow from a retroactive construction.   The present act, unlike its federal predecessor, is an estate tax, and not a tax upon the right to receive.   If the government's contention be sustained, the tax will come, not as in Wright v. Blakeslee, supra, or in Cahen v. Brewster, 203 U. S. 543, 27 Sup. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, out of the sum received by the one to whom the taxed property passes, but will be collected from one to whom it does not.   Neither the Johns Hopkins Hospital nor the Johns Hopkins University will pay one cent of it.   It will all come out of the property going to Grafflin's widow.   Would Grafflin have made any of these transfers, had he understood by so doing he would impose a charge upon his wife of upwards of $23,000? The care with which certain limitations were introduced into each of the agreements would seem to make it highly improbable.

It is easy to conceive of a case in which a man of large estate might, before the passage of the act of 1916, have made considerable transfers to relatives, friends, or to charitable or educational institutions in somewhat the same fashion as Grafflin did, reserving for some residuary legatee a comfortable and even handsome balance of his estate.   If the government is right, such legatee might be stripped of every penny of the testator's bounty.   The taxes on the transferred property might amount to more than the residue of the estate, large as the testator had every reason to suppose it would be, and the Supreme Court, in language already quoted, has held that the courts will not assume that Congress intended any such consequences.   Union Pacific R. R. Co. v. Snow, supra.

It follows that the demurrer to the declaration must be overruled generally.