### CARSCADDEN v. TERRITORY OF ALASKA.

### No. 8894.

Circuit Court of Appeals, Ninth Circuit.

June 28, 1939.

---

378

STEPHENS, Circuit Judge, dissenting.

R. E. Robertson, of Juneau, Alaska (Manley C. Davidson and Rex B. Goodcell, both of Los Angeles, Cal., and M. G. Monagle, of Juneau, Alaska, of counsel), for appellant.

James S. Truitt, Atty. Gen. for Alaska, for Territory of Alaska.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from a judgment dismissing with prejudice appellant's claim to property escheated to the Territory of Alaska, after demurrer had been sustained to the petition and appellant's refusal to plead further.

One Sarah Carscadden, in 1903, was committed to an asylum for the insane. Her son, who is the appellant, left the Territory of Alaska in 1911, and has been absent therefrom since that time.

By § 1, Ch. 40, Alaska Session Laws 1921, it was declared that: "When any person shall die intestate, without heirs, leaving real or personal property in the Territory, the same shall escheat to and become the property of the territory." By § 3, it was provided that: "Whenever the administrator of any estate shall find that his intestate left no heirs, or shall, after due search fail to find that his intestate left heirs, such facts shall be certified by the ad-

ministrator to the probate court, and it shall then be the duty of the latter, as soon as the administrator's final account is settled, to enter a decree adjudging that all the balance of the estate, whether real or personal property, has escheated to and become the property of the Territory." See Compiled Laws of Alaska, 1933, §§ 2895, 2897. This controversy revolves around § 7 of the 1921 act, which provided in part: "Within ten years after the judgment in any proceeding had under this act, a person not a party or privy to such proceeding may file a petition in the District Court showing his claim or right to the property or the proceeds thereof, and that he had no knowledge of the proceeding provided for in the foregoing sections. * * * All persons who fail to appear and file their petitions within the time limited by law are forever barred * * *." Other parts of the section, omitted from the above, provide other steps of procedure enabling the claimant to obtain the escheated property.

On July 13, 1926, Sarah Carscadden died in a sanitarium at Portland, Oregon, leaving personal property in the Territory of Alaska amounting to $2,278.83. An administrator of her estate was appointed in the territory, and on October 1, 1928, the probate court there made an order declaring that the property then in the estate, amounting to $1,921.88, had escheated to the territory, and such amount was paid to the proper territorial officer.

By the act approved May 3, 1933, effective August 1, 1933 (Ch. 95, Alaska Session Laws, 1933) the word "seven" was substituted for the word "ten" appearing in § 7 of the 1921 act, but the remainder of § 7 as quoted above remained unchanged. Compiled Laws of Alaska, 1933, § 2901.

Appellant believed that the deceased was still living and confined to an asylum for the insane, until notified of her death in August, 1935, and on February 5, 1936, first learned of the probate proceedings. On March 28, 1936, appellant filed against appellee his petition "In the District Court for the Territory of Alaska", alleging the above facts. It was subsequently amended to include the allegation that appellant was not a "party or privy" to the mentioned probate proceedings.

It can be seen that the petition was filed within ten, but not seven, years after the date of the order declaring the escheat, and within two years, one month, and twenty-seven days after the effective date of the amendment made in 1933. Appellee's demurrer to the amended petition, on the ground that such petition was not filed within the time limited by Compiled Laws of Alaska, 1933, § 2901, was sustained. Appellant declined to plead further, and judgment of dismissal, with prejudice, was entered, from which this appeal is taken.

■ It has often happened that a statute of limitations in effect when a cause of action accrues, is, before suit is commenced on such cause of action, amended, and the time, within which such suit might be brought, is shortened. Such amendment is valid as to existing causes of action, if it leaves a reasonable time after its enactment within which suit on such causes of action may be brought,[1] but if not, it is invalid.[2]

■ To determine whether or not a subsequent statute is designed to affect causes of action then accrued, is the first question to be considered. Regarding that question it is said in Sohn v. Waterson, 84 U.S. 596, 17 Wall. 596, 599, 21 L.Ed. 737: "A statute of limitations may, undoubtedly, have effect upon actions which have already accrued as well as upon actions which accrue after its passage. Whether it does so or not will depend upon the language of the act, and the apparent intent of the legislature to be gathered therefrom. When a statute declares generally that no action, or no action of a certain class, shall be brought except within a certain limited time after it

[1] Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886; Vance v. Vance, 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808; Gilfillan v. Union Canal Co., 109 U.S. 401, 404, 3 S.Ct. 304, 27 L.Ed. 977; McGahey v. Virginia, 135 U.S. 662, 701, 705, 10 S.Ct. 972, 34 L.Ed. 304; Wheeler v. Jackson, 137 U.S. 245, 255, 11 S.Ct. 76, 34 L.Ed. 659; Turner v. New York, 168 U.S. 90, 94, 18 S.Ct. 38, 42 L.Ed. 392; Saranac Land, etc., Co. v. Comptroller of N. Y., 177 U.S. 318, 20 S.Ct. 642, 44 L.Ed. 786;

Kentucky Union Co. v. Kentucky, 219 U.S. 140, 156, 31 S.Ct. 171, 55 L.Ed. 137; Canadian Northern Ry. Co. v. Eggen, 252 U.S. 553, 562, 40 S.Ct. 402, 64 L.Ed. 713.

[2] Sturges v. Crowninshield, 17 U.S. 122, 4 Wheat. 122, 207, 4 L.Ed. 529; Edwards v. Kearzey, 96 U.S. 595, 603, 24 L.Ed. 793; Wilson v. Iseminger, 185 U.S. 55, 62, 22 S.Ct. 573, 46 L.Ed. 804; Ochoa v. Hernandez, 230 U.S. 139, 33 S.Ct. 1033, 57 L.Ed. 1427.

shall have accrued, the language of the statute would make it apply to past actions as well as to those arising in the future. But if an action accrued more than the limited time before the statute was passed a literal interpretation of the statute would have the effect of absolutely barring such action at once. It will be presumed that such was not the intent of the legislature. Such an intent would be unconstitutional. To avoid such a result, and to give the statute a construction that will enable it to stand, courts have given it a prospective operation. In doing this, three different modes have been adopted by different courts.* * *" The three modes are set out in the opinion.

The first method is to construe the new statute as applicable only to causes of action arising after enactment of such statute.[3] The objection to this rule is said to be that it leaves all causes of action, which arose prior to the enactment of the new statute, without any governing statute of limitations whatever "which, it is presumed, could not have been intended". Sohn v. Waterson, 84 U.S. 596, 17 Wall. 596, 599, 21 L.Ed. 737.

The second method is to construe the new statute to include causes of action arising after enactment of the new statute and existing causes of action for which a reasonable time still remained under the new statute within which suit might be brought. The objection to this method is said to be that it "does not seem to be founded on any better principle than the former". Sohn v. Waterson, supra, 17 Wall. 600, 21 L.Ed. 737.

The third method is to construe the statute as including causes of action arising both prior and subsequent to the enactment of the statute, but as to the former, the time specified in the new statute is calculated from the effective date of such statute.[4] This method was approved in Sohn v. Waterson, supra, and had previously been ap-proved in Ross v. Duval, 38 U.S. 44, 13 Pet. 44, 62, 10 L.Ed. 51, and Lewis v. Lewis, 48 U.S. 776, 7 How. 776, 779, 12 L.Ed. 909. It has since been consistently followed.[5]

Appellee relies on the cases in which it is stated the subsequent statute may apply to existing causes of action if there is a reasonable time left for commencing suit on such causes of action.[6] These cases do not approve the second method of construction, and are not in point. They either consider statutes which expressly were applicable to existing causes of action, but which were given time within which suit might be brought, or they considered state statutes which had been so construed by the state court. In none of them was there any question calling for construction, because the statute was clear, or had been so construed by the paramount authority of the state.

Here, notwithstanding appellant had a reasonable time under the new statute within which to bring his suit, the second method should not have been applied, because it was held objectionable in Sohn v. Waterson, supra. The third method is applicable and controlling, and therefore appellant had seven years from the effective date of the 1933 amendment to bring the instant action.

The foregoing conclusion is reached by using our independent judgment. Whether or not we may do so, is the paramount question to be decided.

In 1874, the Supreme Court of the Territory of Montana made a decision construing its code of practice. It appeared that the same question had "been decided differently by different State courts under precisely the same code of practice". Upon appeal, the Supreme Court of the United States held that it "should, in this conflict of authority, adopt the ruling of the Supreme Court of Montana in the consideration of it". Sweeney v. Lomme, 89 U.S. 208, 22 Wall. 208, 213, 22 L.Ed. 727. The

---

[3] An example of this method may be found in Murray v. Gibson, 56 U.S. 421, 15 How. 421, 14 L.Ed. 755, where a state court so construed the state statute. Compare: U. S. Fidelity Co. v. U. S., for Use of Struthers Wells Co., 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804.

[4] The statute considered in Mitchell v. Clark, 110 U.S. 633, 639, 4 S.Ct. 170, 312, 28 L.Ed. 279, expressly so provided.

[5] Union Pac. R. R. v. Laramie Stock Yards, 231 U.S. 190, 34 S.Ct. 101, 58 L. Ed. 179; Union Pac. R. R. Co. v. Snow, 231 U.S. 204, 34 S.Ct. 104, 58 L.Ed. 184; Union Pac. R. R. Co. v. Sides, 231 U.S. 213, 34 S.Ct. 107, 58 L.Ed. 189; United States v. Morena, 245 U.S. 392, 38 S.Ct. 151, 62 L.Ed. 359. Compare: Chapman v. County of Douglas, 107 U.S. 348, 358, 2 S.Ct. 62, 27 L.Ed. 378.

[6] See the cases in note 1.

doctrine[7] grew until it was declared in Matos v. Hermanos, 300 U.S. 429, 432, 57 S.Ct. 529, 81 L.Ed. 728, that the federal courts must give "due deference" to the decisions of the territorial courts on local questions and sustain them unless the federal courts entertained "a sense of clear error committed". At that time the doctrine of Swift v. Tyson, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865, prevailed, and determination of whether a question was "general" or "local" evidently was to be determined by the rule announced in that case.

The first act of Congress relating to Alaska was the Act of July 27, 1868 (15 Stat. 240). It extended certain laws of the United States to the territory of Alaska, and provided that "any district court of the United States in California or Oregon, or * * * the district courts of Washington * * * shall have original jurisdiction, and may take cognizance of all cases arising under this act and the several laws hereby extended over the territory * * *." Section 7. No change in this respect was made by the Revised Statutes. See §§ 1954–1976.

The Act of May 17, 1884 (23 Stat. 24) authorized the appointment of four commissioners for the district of Alaska, who were authorized to "exercise all the duties and powers, civil and criminal, now conferred on justices of the peace under the general laws of the State of Oregon" and other duties and powers. Section 5. There was also created a district court for the district of Alaska "with the civil and criminal jurisdiction of district courts of the United States, and the civil and criminal jurisdiction of district courts of the United States exercising the jurisdiction of circuit courts, and such other jurisdiction, not inconsistent with this act, as may be established by law". Section 3. It was provided that "appeal shall lie" to the district court from the judgments of the commissioners; that writs of error in criminal cases "shall issue" to the district court from the United States circuit court for the district of Oregon; and that the final judgments or decrees of the circuit and district court "may be reviewed" by the Supreme Court of the United States. Section 7.

Nothing in any of the provisions indicated any intention that any of the courts were not to exercise their independent judgment. However, the law of the district was declared to be "the general laws of the State of Oregon" insofar as applicable and not in conflict with the laws of the United States.

In M'Allister v. United States, 141 U.S. 174, 11 S.Ct. 949, 953, 35 L.Ed. 693, it was held that the district court in Alaska was not one "of the courts of the United States" within the meaning of Rev.St. § 1768 which authorized the President to suspend any civil officer "except judges of the courts of the United States". To the same effect: In re Cooper, 143 U.S. 472, 494, 12 S.Ct. 453, 36 L.Ed. 232.

The Act of March 3, 1891 (26 Stat. 826) created the United States Circuit Courts of Appeals empowering them "to review by appeal or by writ of error final decision in the district court and the existing circuit courts". Section 6, 28 U.S.C.A. § 225. They were also given "jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several Territories * * *." Section 15. In Steamer Coquitlam v. United States, 163 U.S. 346, 16 S.Ct. 1117, 41 L.Ed. 184, it was held upon certificate from this court that there was no jurisdiction to review the final judgments or decrees of the Alaska court under § 6, because that section referred to "constitutional courts" and the district court of Alaska "was a legislative court". Steamer Coquitlam v. United States, supra, 163 U.S. 351, 16 S. Ct. page 1119, 41 L.Ed. 184. However, it was held that § 15 of the act authorized review of such judgments and decrees because the district court of Alaska was "the court of last resort, within the limits of that territory" and was "in every substantial sense, the supreme court of that territory". Steamer Coquitlam v. U. S., supra, 163 U.S. 352, 16 S.Ct. page 1119, 41 L.Ed. 184.

The Act of March 3, 1899 (30 Stat. 1253) which was an act to provide a code of criminal procedure in the District of Alaska, provided that the "common law of England as adopted and understood in the United States shall be in force in said District, except as modified by this Act". Title I, § 218. It was further provided that "appeals and writs of error in criminal actions may be taken and prosecuted from the decisions and judgments of the district court for the District of Alaska to the

---

[7] In Northern Pacific Railroad v. Hambly, 154 U.S. 349, 361, 14 S.Ct. 983, 38 L.Ed. 1009, it was said that the territorial court's decision was not obligatory.

Supreme Court of the United States, or to the circuit court of appeals for the ninth circuit" as there provided. Title II, § 202.

The Act of June 6, 1900 (31 Stat. 321) changed the judicial system. It established a district court of three divisions, "which shall be a court of general jurisdiction in civil, criminal, equity, and admiralty causes". Title I, § 4; see also Title II, § 699. Provisions for appeals to the Supreme Court of the United States were made, and this court was specifically authorized "to review by writ of error or appeal the final judgments, orders, of the district court" as there provided. Title II, § 504. It was further provided: "The Attorney-General may, from time to time, make such rules and regulations, not in conflict with law, as he may deem necessary to insure the efficient administration of the law and to avoid conflicts of jurisdiction or of officials in the district."

The Act of March 3, 1909 (35 Stat. 838) changed the court so that it consisted of four divisions with four judges. Section 2, 48 U.S.C.A. § 101.

The Act of August 24, 1912 (37 Stat. 512) established the Territory of Alaska with a local governing body. It was provided "that all the laws of the United States heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by Act of Congress; that except as herein provided all laws now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress or by the legislature * * * the legislature shall pass no law depriving the judges and officers of the district court of Alaska of any authority, jurisdiction, or function exercised by like judges or officers of district courts of the United States". Section 3, 48 U.S.C.A. §§ 23, 80.

United States Code, Title 28, § 225(a) as amended, 28 U.S.C.A. § 225(a), provides:

"The circuit courts of appeal shall have * * * jurisdiction to review by appeal final decisions—* * *

"Third. In the District Court for the District of Alaska, or any division thereof * * *

"Fourth. In the Supreme Courts of the Territory of Hawaii * * *."

With respect to the decisions of the Supreme Court of the Territory of Hawaii, the Supreme Court of the United States had given them due deference in Ballentyne v. Smith, 1907, 205 U.S. 285, 291, 27 S.Ct. 527, 51 L.Ed. 803, and in Kealoha v. Castle, 210 U.S. 149, 154, 28 S.Ct. 684, 52 L.Ed. 998. When jurisdiction of appeals from that territorial court was extended to this court, in 1915, we were, of course bound by those decisions. Hawaii County v. Halawa Plantation, Limited, 9 Cir. 1917, 239 F. 836, 839; In re Bishop's Estate, 9 Cir., 250 F. 145, 147. The rule at that time, however, concerned only decisions on "local" questions, and the fact, that our power to "review" such decisions was not limited by anything in the statute, was not considered previous to Waialua Agricultural Co. v. Christian, 305 U.S. 91, 109, 59 S.Ct. 21, 30, 83 L.Ed. 60. The Supreme Court's decision in that case laid down a rule which has the effect of limiting our power to "review" decisions of the territorial court on "general or local law" to "cases of manifest error". That rule has the same effect as a legislative amendment.

The basis for that rule was stated to be: "While the 34th section of the Judiciary Act [28 U.S.C.A. § 725] is not applicable to territories, the arguments of policy in favor of having the state courts declare the law of the state are applicable to the question of whether or not territorial courts should declare the law of the territories with the least possible interference". These arguments of policy, as set out in Erie R. Co. v. Tompkins, 304 U.S. 64, 74–77, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, all resulted from, and were based on, the diversity of opinions between the federal courts and the state courts, over which there was no single control. The control over the territorial court and the federal court, by Congress and this court, was apparently not considered a sufficient safeguard against conflicting decisions of the territorial court and the federal court. With respect to Alaska, the circumstance of a conflict between decisions of the territorial court and a federal court does not confront us, because there is only one court in Alaska. For these reasons, we see no basis[8] for the application of a similar re-

---

[8] Historical treatment of territories of the United States does not disclose an argument for or against the application of the "manifest error" rule to Alaska. See: Resolution of the Continental Congress on October 10, 1780 as mentioned in Ex

striction of the statute with respect to the Alaska court.

[6] The Act of May 24, 1935 (49 Stat. 289, 48 U.S.C.A. § 101a) amended 18 U.S.C.A. § 641 which provided for the discharge of indigent convicts by "any commissioner of the United States court in the district where he is imprisoned". The amendment was that the "District Court of the Territory of Alaska shall be deemed a court of the United States * * * within the intent and meaning of this section". We think that the amendment did not make such court a constitutional court, enabling us to exercise our independent judgment merely because of the amendment. Mookini v. United States, 303 U.S. 201, 205, 58 S.Ct. 543, 82 L.Ed. 748.

■ Appellee contends that the district court acts in a dual capacity (1) for administering local laws; and (2) for administering federal laws. While we agree with that statement, we think that actually the question is decided by the statutes conferring jurisdiction on this court to review the decisions of the district court. The Supreme Court of the United States has never declared the "manifest error" rule applicable to Alaska. The settled practice in this court has been to exercise an independent judgment with respect to both general and local questions, probably because of the chance of conflicting decisions by the Alaska judges, without other remedy in the courts to avoid the conflict. In view of this settled practice we think we should continue to exercise our independent judgment with respect to appeals from the District Court of the Territory of Alaska, on all questions, whether federal, general or local, until required to "abdicate" from that practice by a statute or a decision of the Supreme Court of the United States to the contrary. Compare: White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172.

■ Exercising our independent judgment on the question presented herein, we hold that the court below misapplied the Alaska statute in question as above stated.

Reversed.

STEPHENS, Circuit Judge (dissenting).

I dissent.

After certain monies had been ordered escheated to the Territory of Alaska, the statute limiting the time for bringing action for the recovery of escheated money was shortened from ten to seven years. From the effective date of the amendment the claimant herein had over two years of the seven provided by the amendment within which to bring his action. He did not bring his action within this time but did bring it within the ten year period which was in force at the time of the escheating order. [See main opinion for additional facts.] The Alaskan court held that the statute had run against the action.

The majority have concluded that the trial court's judgment, though not manifestly erroneous is nevertheless wrong. They believe it to be their duty to follow and apply the holding in Sohn v. Waterson, 17 Wall. 596, 84 U.S. 596, 21 L.Ed. 737, that of three separate methods of applying the statute in similar circumstances, the one which extends the time for the full period of the limitation from the date of the amendment is, or appears to be, the most reasonable. Accordingly, they apply this rule. The cited case, however, does not hold that it is manifestly erroneous to apply either of the other rules, but the opinion calls attention to the fact that the Supreme Court has not hesitated to follow the other rules where actions have arisen in states whose Supreme Courts have adopted them.

It should be kept in mind that the discussion here is relative to a local statute upon a local question which partakes of general legal principles in its application. Federal courts are given jurisdiction of actions arising from such statutes only because of diversity of citizenship of the parties, and when acting within such jurisdic-

---

parte Morgan, D.C.Ark., 20 F. 298, 304 and Bond, The Civilization Of The Old Northwest (1934), p. 7; Articles of Confederation, which contained no provision regarding territories generally; the ordinance of 1784, as stated in Clinton v. Englebrecht, 80 U.S. 434, 13 Wall. 434, 441, 20 L.Ed. 659; the Northwest Ordinance of 1787; Art. IV, § 3 of the Constitution, U.S.C.A.; 1 Stat. 50, 123, 549; 2 Stat. 58, 245, 283. Langdell in The Status Of, Our New Territories (1899), 12 Harv.L.Rev. 365, 379, concludes that the federal courts have the duty of exercising judicial powers with respect to territories. It has never been asserted that the general judicial power is limited to cases of "manifest error".

tion are in effect substituting for the state courts.

I believe the argument which follows, supplemented and sustained by authorities, as it will be, will clearly show that the majority theory of this court's duty in the premises is erroneous and that the Sohn case, supra, does not control the disposition of this case.

The Supreme Court took occasion in the case of Waialua Agricultural Co. v. Christian, 305 U.S. 91, 108-110, 59 S.Ct. 21, 30, 83 L.Ed. 60, to define the principles to be applied by federal appellate courts in reviewing decisions of the territorial courts. In that case this court was reversed for applying its "independent judgment" in the absence of manifest error, over the judgment of the Supreme Court of Hawaii. In reversing the decree of this court (Circuit Court of Appeals) and affirming the decree of the Hawaiian court, the Supreme Court recited historical data as to the development of Hawaiian law, which it declared gave present substance to the rule of the Supreme Court "that deference will be paid the understanding of territorial courts on matters of local concern [citing, Matos v. Hermanos, 300 U.S. 429, 430, 432 [57 S.Ct. 529, 81 L.Ed. 728]; Kealoha v. Castle, 210 U.S. 149, 154 [28 S.Ct. 684, 52 L.Ed. 998]; Lewers & Cooke v. Atcherly, 222 U.S. 285, 293 [32 S.Ct. 94, 56 L.Ed. 202]; Ewa Plantation Co. v. Wilder [9 Cir.] 289 F. 664, 669]". The court went on to state that the legal principles involved in the case partook of general law, as well as of local law. It then declared, 305 U.S. at page 109, 59 S.Ct. at page 30, 83 L.Ed. 60, that: "We see no reason for not applying the rule as to local matters to these circumstances. While the 34th section of the Judiciary Act is not applicable to territories, *the arguments of policy in favor of having the state courts declare the law of the state are applicable to the question of whether or not territorial courts should declare the law of the territories with the least possible interference.* Cf. Swift v.

Tyson, 16 Pet. 1, 10 L.Ed. 865; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. [1188] 114 A.L.R. 1487; Lewers & Cooke v. Atcherley, 222 U.S. 285, 294, 32 S.Ct. 94, 95, 56 L.Ed. 202. It is true that under the appeal statute the lower court had complete power to reverse any ruling of the territorial court on law or fact, Cf., Philippine Sugar Co. v. Philippine Islands, 247 U.S. 385, 390, 38 S.Ct. 513, 514, 62 L.Ed. 1177, *but we are of the opinion that this power should be exercised only in cases of manifest error.* * * * In so far as the decisions of the Supreme Court of Hawaii are in conformity with the Constitution and applicable statutes of the United States and are not manifestly erroneous in their statement or application of governing principles, they are to be accepted as stating the law of the Territory. Unless there is clear departure from ordinary legal principles, the preference of a federal court as to the correct rule of general or local law should not be imposed upon Hawaii." [Emphasis supplied.]

In the instant case we find the Alaskan court applying a territorial statute where there are three applicable but inconsistent rules therefor. The court adopts one of them and it is not claimed that the one adopted is clearly, or at all erroneous. In the circumstances I conceive it to be our duty to proceed as the Supreme Court has announced this court should have proceeded in the Waialua case, for I believe that the decision of the Alaskan court stands upon the same basis in respect of the question under discussion as that of the Hawaiian court.

As I read the main opinion, the refusal of the majority to apply the rule of the Waialua case is based upon the idea that such rule is one of policy designed to prevent diversity of decision between two independent sets of courts in the same territorial jurisdiction, and that such a policy is not applicable in the instant case, "because there is only one court in Alaska".[1] This conception not only ignores the fact

[1] There are four judicial districts in Alaska, each of which is presided over by a district judge, and these courts have original jurisdiction over both local and federal matters. There is no Supreme Court in Alaska over these District Courts. There are in Hawaii, territorial trial courts with local jurisdiction, and a Supreme Court over them, and also a District Court with similar jurisdiction as continental United States District Courts. The United States Circuit Court of Appeals for the Ninth Judicial Circuit has appellate jurisdiction over the Supreme Court and over the District Court.

Although the statute under consideration in the Coquitlam case, cited in the main opinion, (163 U.S. 346, 16 S.Ct. 1117, 41 L.Ed. 184) was different from the one governing the instant case, I think the reasoning used by the Supreme Court in that case is good in our case. That is,

that this court's appellate jurisdiction is practically the same as to both Alaskan and Hawaiian courts, but entirely misses the fundamental statecraft of the Waialua opinion.

The student who cares to delve into more historical fact surrounding the first federal judiciary act than is recited in the case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, or in the Waialua case, supra, will find Warren's "New Light on the History of the Federal Judiciary Act of 1789", (37 Harvard Law Review, 49, November, 1923) reflecting the fear of leaders and the populace in general that appellate courts removed from the seat of the cause of action might lay too heavy a hand upon the administration of justice. They feared that democracy would lose its vitality by appellate judicial overlordship, and such fear had a profound influence in shaping § 34 of the Judiciary Act, which Act, it may be noted, was the No. 1 Bill of the first session of the United States Senate. The section of the Act referred to is as follows: "The laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply." 1 Stat. 92.

The case of Swift v. Tyson,[2] 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865, by limiting the word "laws" as used in the Act to "statutes or positive, fixed or ancient local usage", assisted by subsequent judicial extension, acted to free the federal courts from much of the local common law, and this caused great confusion as to the proper limitation of federal courts' power in respect of state matters subject to their adjudication. Thus in non-federal matters the citizen of any state was subject not only to the statute and decision law of his own state, but at the same time was largely subject to such interpretation of state law as might be declared by a federal judiciary that framed its decisions upon general principles most acceptable to itself. Black & White Taxicab & T. Co. v. Brown & Yellow Taxicab & T. Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426.

However, the Supreme Court in the case of Erie R. Co. v. Tompkins, supra, renounced the theory upon which the case of Swift v. Tyson, supra, rested, saying (304 U.S. page 79, 58 S.Ct. page 823, 82 L.Ed. 1188, 114 A.L.R. 1487) that the fallacy underlying the rule there declared, " * * * rests upon the assumption that there is 'a transcendental body of law outside of any particular State but obligatory within it unless and until changed by statute.' " and (304 U.S. page 78, 58 S.Ct. page

---

that the District Courts of Alaska are not only in fact the courts of last resort in the territory, but are the supreme courts of the territory for the purposes of appeal.

The present applicable statute [28 U.S.C.A. § 225] is as follows:

"(a) Review of final decisions. The circuit courts of appeal shall have appellate jurisdiction to review by appeal final decisions—

"First. In the district courts, in all cases save where a direct review of the decision may be had in the Supreme Court under section 345 of this title.

"Second. In the United States District Courts for Hawaii and for Puerto Rico, in all cases.

"Third. In the District Court for the District of Alaska, or any division thereof, and in the District Court of the Virgin Islands, in all cases; and in the United States District Court for the District of the Canal Zone in the cases and modes prescribed in sections 61 and 62, title 7, Canal Zone Code (48 Stat. 1122).

"Fourth. In the Supreme Courts of

the Territory of Hawaii and of Puerto Rico, in all cases, civil or criminal, wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved; in all other civil cases wherein the value in controversy, exclusive of interests and costs, exceeds $5,000, and in all habeas corpus proceedings.

"Fifth. In the United States Court for China, in all cases. As amended Jan. 31, 1928, c. 14, § 1, 45 Stat. 54; May 31, 1935, c. 160, 49 Stat. 313; June 20, 1938, c. 526, 52 Stat. 779. * * * "

I can see no merit whatever in the theory that our court [United States Circuit Court of Appeals for the Ninth Judicial Circuit] is in effect the Supreme Court of Alaska for territorial local matters—a conclusion that must follow from the majority opinion.

[2] For criticism and comment as to Swift v. Tyson, supra, see Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and exhaustive notes thereto.

822, 82 L.Ed. 1188, 111 A.L.R. 1487), that, " * * * whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. *There is no federal general common law.*" [Italics supplied.]

Thus we have seen that the fundamental error of Swift v. Tyson, supra, was the assumption that there was a national common law applicable by federal courts in state matters which was a separate body of law from the common law applicable by the state courts. And we have also seen the renunciation of such doctrine through Erie R. Co. v. Tompkins, supra, and the supremacy established for state court application of the common law.

It is my conviction that the Waialua case is a natural sequence of the case of Erie R. Co. v. Tompkins, supra and constitutes a practical application of the fundamental democratic principle of our system of self-government. The avoidance of diversity of opinion between two concurrent court systems is but a secondary though commendable "policy".[3]

The principle of the case of Erie R. Co. v. Tompkins, supra, which I have just adverted to seems to me to have equal force whether the review in a federal appellate court is of a decision of a territorial court upon a territorial question or whether it is of a decision of a federal court upon a state question. It furnishes a reason, or a "policy", for yielding the utmost deference to the opinion of a territorial court as to the law of such governmental entity. It gives good reason and a logical basis for deferring to the opinion of the constituted local court in the absence of manifest error, rather than the exercising of an independent judgment by a "foreign" court influenced and controlled by unknowable factors.

Another case referred to by the Supreme Court in the Waialua case [Lewers & Cooke v. Atcherly, 222 U.S. 285, 32 S.Ct. 94, 56 L.Ed. 202] further evidences the "arguments of policy" which influenced the Supreme Court in the Waialua case. In the cited case the U. S. Supreme Court accepted the rule of the Supreme Court of the Territory of Hawaii both as to a procedural matter and as to a matter of substance. As to the latter determination, it was said (222 U.S. page 294, 32 S.Ct. page 95, 56 L.Ed. 202): *"On this point also there is every reason for attributing great weight to the decision of the court on the spot. It concerns the powers of another earlier local tribunal, and involves obscure local history concerning a time when the forms of our law were just beginning to superimpose themselves upon the customs of the islanders."* [Emphasis supplied.] Thus we find the Supreme Court in the Waialua case harking back to its earlier expressions as to the wisdom of accepting local declarations of the law of a territory—a principle that logically demands extension to all matters of non-federal law once the premise declared in Erie R. Co. v. Tompkins, supra, that "there is no federal general common law" is accepted.

What influence the colorful history of Alaska through its several dramatic periods has had upon the common law of that autonomous territory is not ours, as an appellate court, to say. It is not ours to require the adoption by Alaska's local courts of a certain ruling because we prefer it, for such preference may fail to take the local influence into account.

To my mind it is clear that the principle laid down in the Waialua case is applicable to the Territory of Alaska as well as to the Territory of Hawaii and that it is our duty to so apply it. Since the decision of the trial court in the instant case, in the full light of the circumstances, does not constitute a clear departure from ordinary legal principles, our preference as to the rule to be applied should not be imposed upon Alaska. The judgment of the District Court should be affirmed.

---

[3] The historical data of the Waialua case would be purposeless under the construction given it by the majority opinion. I do not perceive that such historical recital has any bearing on the question of the advisability of preventing a conflict between two sets of courts. I think it also well worth noting, that nowhere in the Waialua case is reference made to any other court of the Territory of Hawaii than the Supreme Court thereof—a peculiar circumstance indeed if the opinion is to be interpreted as resting on the existence of two independent and conflicting courts in that Territory.